## MUNICIPALITY NO. TWO *v.* H. W. PALFREY et al.

There is no evidence of the dedication of the lot bounded by Camp, Coliseum and Robin streets, in the suburb Lacourse, to public use.

The failure to pay taxes on property, even for a great length of time, does not prove an abandonment of the property to public use.

In an original plan of division of suburban property, there was the same indicia of the dedication of a lot to public use, that there was of the streets. The streets and the lot were not separated by lines. The lot was not subdivided for sale, nor colored like the squares around, which were for sale. There was a cessation of all use of the lot as private property for forty years, and an abandonment of it to the public for that time, nor were any dues or taxes paid upon it. *Held:* that this amounted to a dedication of the lot as a public place. *Preston,* J., dissenting.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J. *R. Hunt* and *W. D. Hennen,* for plaintiff. *Soulé* and *Barton,* for defendants. By the court: *(Slidell,* J., absent.)

EUSTIS, C. J. The municipality claims a certain lot of ground of an irregular form, bounded by Camp, Coliseum and Robin streets, in the former suburb Lacourse, as public property, or for the use of the public. The claim is based upon an alleged dedication to public use, by virtue of the original plan under which that part of the suburb was originally laid out and disposed of in lots to different purchasers, which is the same plan adjudicated upon, in the cases of *Xiques et al.* v. *Bujac,* and *Livaudais* v. *The Municipality.* There was judgment in the district court against the plaintiff.

On an examination of the original plan, and considering the published prospectus, which preceded the sale and stated the conditions on which the property was offered for sale, we do not find any evidence whatever of the dedication of this space to the public use, or any transfer of ownership, or creation of servitude in relation thereto, by its original owner.

This piece of ground was not enclosed by the municipality, until 1845. Previous to that time, we do not think the evidence established any use or occupation of it, inconsistent or adverse to the civil possession of the owner. We think there is no prescriptive right acquired by the municipality or the public, adverse to the ownership. This ground appears to have been very low and marshy, and inaccessible in wet weather. It was called by the old inhabitants, the Bayou des Armes, and not used until reclaimed in 1845. We do not think the non-payment of taxes for this ground makes, of itself, any difference as to the right of ownership, or proves an abandonment of it to the public use. It is not proved that it was assessed, and may have been omitted on the assessment on account of its condition and little value. Nor do we consider the receipt of taxes on the land since 1849, as in any manner affecting the rights of the municipality. The merits of the case seem to be independent of these facts.

The district judge has, as well as in the case of *Xiques et al.,* given his views at great length and with great care on the different points of fact relied upon by the counsel for the plaintiff. The case does not appear to present any difficult question of law. We think the district judge came to a correct conclusion.

The judgment of the district court, is therefore affirmed, with costs.

MUNICIPALITY
No. Two.
*v.*
PALFREY.

PRESTON, J., dissenting. All the principles of law and authorities to which I referred in the case of Annunciation square, apply to the ground of an irregular figure claimed by the representatives of *Robin Delogny* and *François Livaudais* in this case.

Most of the facts which lead me to conclude that the former was a public place, lead me to the same conclusion as to the place in controversy, to which they are equally applicable.

The place is left white on the plan, and not colored as adjacent squares. It is not divided into lots for sale like all the squares around it. It is not surrounded by a black line of boundary like all the other squares and lots, but is left with the same indicia of dedication as the streets adjoining it, which are not separated from it by any line. It is surrounded by broad canals, collecting the waters of the faubourg into a circular basin in front of it, to be carried off to the rear by the canal Melpomene, exhibited on the plan, even at the early day at which it is dated.

There is a large circular *cours* (yard, not a street) connected with it, leading to another oblong *cours*, called Cours Prytanée, and which is in front of a square called Prytanée evidently intended by the plan, for courts of justice, and by the prospectus to a college. It joins above, a place named on the plan, Coliseum, intended for a place of pleasure. The place in controversy, fronts on the Coliseum and basin, and is bounded by the canals leading to it, and is open and connected with the Cours Prytanée. I have no doubt from the inspection of the plan, that it was dedicated for a public place by the cessation of all use of it as private property for forty years, and its abandonment to the public during that long period, during which they never claimed it, or paid taxes or any dues upon it.

The lots around it were, no doubt, sold for enhanced prices, on account of its supposed dedication, and have been assessed and taxed higher, ever since, on account of the large, open, airy space actually left in front of them, for more than a generation of man. The city filled it up, enclosed and improved it, surrounding it with a chain fence, and with banquets and gutters.

I have no doubt it is a public place, which the ancestors of the ancestors of the claimants in this suit, for ample consideration in the enhanced value of their faubourgs, abandoned in favor of the public forty-five years ago, and that they cannot resume it as private property, without the violation of the rights of surrounding proprietors in particular, and the public in general.