No. 1410.

CHARLES H. BROWN, TUTOR, ET AL. VS. EDMONIA BROUSSARD, WIFE, ET AL.

1. Ambiguity or obscurity in the description of the thing sold is to be construed against the seller. C. C. 2474.

Tutor et al. vs. Broussard, Wife et al.

2. A sale for a gross piece of land described by meter and bound, is a sale *per aversionem.*

3. All parts of the act of sale are to be construed together, and obscurity in the description of one boundary may be removed by other recitals in the deed showing the nature and extent of the thing sold, aided by evidence of the acts of the parties in delivering and receiving the possession.

4. Even if defendant's title were doubtful, her plea of ten years' prescription would be fatal to plaintiff's demand.

APPEAL from the Thirteenth District Court, Parish St. Landry. Lewis, J.

### *W. S. Frazee* and *Thos. H. Lewis* for Plaintiffs and Appellees:

To support the plea of prescription of ten years for the acquisition of an immovable, the possessor must hold for that period a just title. C. C. 3474.

His possession must be continuous and uninterrupted, peaceable, public and unequivocal. C. C. 3487.

A just title is one derived from one whom the vendee honestly believed to be the rea owner; it must also be a title such as to transfer the ownership of the property. C. C. 3484. The possessor must have the positive belief that he is the true owner. If he doubts the validity of his title, his possession can not be the basis of the prescription of ten years. Louke's Digest, page 561, No. 2. And one shown to be a purchaser in bad faith can not sustain the prescription of ten years.

A possessor in bad faith is accountable for rents and revenues. C. C. 3453. C. C. 502-3.

One selling so many arpents front by a depth of forty, conveys the superficial quantity which results from multiplying the front by the depth, unless the contrary be *expressed.* 6 U. S. 700; 7 U. S. 120; 12 La. 139; 18 La. 103.

### *Kenneth Baillio* for Defendants and Plaintiffs:

There can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by adjoining tenements, and sold from boundary to boundary. C. C. 2495.

A sale in which specified boundaries are given is a sale *per aversionem,* or a sale from one fixed boundary to another, which includes all the ground between the points mentioned, whether the measure be correctly stated or not, the calls for a boundary controlling the enumeration of quantity. 16 La. 333; 18 La. 526; 19 La. 422; 1 R. 34; 2 R. 357; 9 R. 30; 15 An. 76; 16 An. 116.

In a sale *per aversionem,* nothing is conveyed but what is contained between the given boundaries; and deficiency in the quantity does not entitle the purchaser to demand a recession of the sale or diminution of the price. C. C. 854, 2495; 3 La. 91; 14 La. 497; 2 An. 808.

In a sale *per aversionem,* if there be error as to quantity but none as to boundary, the vendor can not claim any excess over the quantity specified. 5 N. S. 243; 8 N. S. 160; 2 La. 502; 7 La. 457.

Where land well known to the purchaser, is sold by specific boundaries, not as designating the situation of the property, but as indicating the bounds within which a vendor sells, it is a sale *per aversionem.* 3 La. 91.

A sale for a gross sum of land described as bounded on one side by the limits of A,. and on the other by the limits of B, where the land has been cultivated as a plantation and fenced on each side, is a sale *per aversionem*. 4 La. 536.

Good faith is always presumed. C. C. 3581.

He who acquires an immovable in good faith, and by a just title, prescribes for it in ten years. C. C. 3478.

The ownership of movables is prescribed for by thirty years without any need of title or possession in good faith. C. C. 3499.

All parties interested in a contract must be made parties to an action to annul it. 26 An. 388, 467; 28 An. 454.

An agent can not disclose confidential communications without the consent of his. client. Greenleaf, Vol. 1, par. 239.

In a petitory action plaintiff must make his claim to the property legally certain, both as to title and identity. 12 R. 46; 10 M. 293; 15 An. 410; 23 An. 274; 22 An. 59.

As against defendant in possession, plaintiff must show a title as good as any outstanding title. 3 R. 206; 10 R. 505; 11 R. 233; 35 An. 609.

The opinion of the court was delivered by

FENNER, J. This is a petitory action brought by the heirs of Antoine Ynogosa to recover from the defendant a certain tract of land in possession of defendants which they aver was the property of their ancestor and has never been alienated by him.

The defendant claims as owner under a chain of titles running· back to Ynogosa, and also pleads the prescriptions of thirty and of. ten years.

Ynogosa acquired the land by purchase from the estate of Widow Jean Savoie in 1829 by a deed which describes the land as follows: · " A tract of land situated, lying and being in the aforesaid parish on the Bayou Carancro, *bounded on one side by land of Augustin Guidry.* and on the other side by land of John H. H. Smith, having seven arpents front by forty arpents in depth—together with the dwelling house and yard fence thereon, reserving all other improvements thereon, being the same tract of land on which the said deceased last resided.

" And also sixty arpents of woodland, that is to say three arpents front by twenty in depth, bounded on one side by land of Widow David Guidry and on the other side and on one end by land of Jean Savoie."

In 1848, Ynogosa sold to Joseph and Neville Boudreau by the following description which we translate from its original French: " A certain tract of land *established as a plantation*, situated on the· Bayou Carencro, measuring four arpents front by twenty in depth,.

being the northwest side of said bayou on the T. 8. S. of R. 4. E., described on a plan made by John Denismore, dated April 14, 1811, and delivered by said vendor to the said Boudreau, and bounded on one side by the plantation of John H. H. Smith, and on the other by the public domain, together with all the buildings thereunto appertaining, and also a certain piece of woodland situated and lying on the same bayou containing thirty superficial arpents bounded on the east by Raphael Richard, on the north by Achille Savoie, on the south by J. A. Guidry, on the west by land of the vendor, being the same lands acquired by the vendor at the auction of Widow Jean Savoie about the year 1830.''

The price was the gross sum of $2500. The first question that presents itself is whether this was a sale *per aversionem* or a sale of so many acres.

Plaintiffs claim that it simply transferred four arpents front out of the seven arpents front owned by Ynogosa, and that the remaining three arpents front by forty in depth were not conveyed, but remained the property of their said ancestor.

The defendant claims that it was a sale *per aversionem* of the whole tract purchased by Ynogosa from the estate of Savoie as declared in the act, which, as a whole, was " established as a plantation," as also declared in the act.

The description of the thing sold is obscure and ambiguous. The Code, Article 2474, declares: " The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him."

Upon its face the sale was intended to be *per aversionem*. It is made for a gross sum and is described by specific boundaries. Johnston vs. Quarles, 3 La. 91; Curator vs. Wells, 4 La. 536.

If the northern boundary had been correctly stated as being bounded by lands of Guidry, there would have been no room for dispute. The erroneous statement of the number of arpents front could, in that case, have made no difference. The only difficulty arises from the statement of the northern boundary as being " the public domain." But that statement is totally inconsistent with the theory of plaintiffs that the sale embraced only four arpents next to the southern line of John H. H. Smith, because, in that case, necessarily the northern boundary would have been by land of the vendor.

In truth, it is quite evident that the variances in description, both

as to the number of arpents front and as to the northern boundary, arose from the fact that the notary who drew the act did not have before him the precedent deed from Savoie to Ynogosa.  This appears from the reference to that title as having been acquired " *about the year 1830,*" whereas the true date, as appearing on its face, was March 13, 1829.  We think the true meaning of the act is controlled by the recitals that the sale was of an " established plantation,'' and that the land conveyed was " the same lands acquired by the vendor at the auction of Widow Jean Savoie," without making any reservation therefrom.

The evidence is conclusive that the entire tract was embraced in the plantation; that the cultivated land was included between fences on the northern and southern boundaries, and that several of the plantation buildings were located on the northern three arpents front now claimed by plaintiffs.

It is further shown that Ynogosa pointed out the boundaries to the purchaser, Boudreau, and delivered to him the whole tract; that he asked permission to remain for a time after the sale in the house, which, according to the preponderance of testimony, was on the land now claimed by plaintiffs; that the permission was granted, and that he was taken ill and died there.  There have been numerous translations of title, and all the purchasers have possessed and used the entire tract as one undivided plantation; have maintained fences on the northern boundary, and have continuously cultivated parts of the land claimed by plaintiff.  A large number of witnesses from the neighborhood testify to these facts, and all agree that the whole tract had been always regarded as one plantation and as belonging to one owner.

We are thoroughly satisfied the sale by Ynogosa was intended to be a sale *per aversionem* of the entire tract, as one established plantation, for a gross price in no manner relating to the number of arpents, and that it operated a complete divestiture of Ynogosa's title.

The youngest of the minor plaintiffs attained majority in 1869, and much more than ten years had elapsed before this suit was brought or any claim set up on this land.

We think the defendant and her authors possessed all the elements of possessors as owners in good faith under a just title as defined in Articles 3473, 3478, 3451 and 503 of the Civil Code, and her plea of

prescription of ten years, if necessary to sustain her title, would unquestionably be good. The attempt to impugn the good faith of defendant by bringing home to her knowledge of any defect in the title is not successful. She never doubted her title, nor do we.

Equally futile is the assault upon the possession. It was complete, continuous and uninterrupted.

The verdict and judgment appealed from were manifestly erroneous.

It is, therefore, ordered and decreed that the verdict and judgment appealed from be annulled and set aside, and it is now decreed that there be judgment in favor of defendant, and rejecting the demand of plaintiffs at their cost in both courts.