The opinion of the court was delivered on the original hearing i>y
Watkins, J.
The plaintiffs Mary Waddill and William R. Messick, representing themselves to be, the former surviving widow and partner in community of William R. Messick, Sr., deceased, and the latter his only son and heir, instituted this suit as joint and equal owners and proprietors, for the recovery of the following described property:
(1) The south half, and north half of the northwest quarter of section 2Y, township 2 south, range 6 east.
(2) The undivided one-half of the whole of section 10; the west half of the southwest quarter of section 35; the whole of section 21; and the south half of northwest quarter of section 2Y, all in township 2 south, range 6 east; and the west half of section 3, in township 2 south, range 5 east — containing in all, the quantity of about 1280 acres, said property being worth the sum of $5,000.00.
They represent that said-property was acquired by William R. Mes-sick, Sr., deceased, during his marriage with the plaintiff, Mary F. Waddill, and that same belonged to the community of acquets and gains existing between them; and that said Messick purchased same at tax collector’s sale on the 8th day of October, 18Y3, “as will appear by reference to said act of sale and the plat attached thereto, which are annexed to and made parts of this petition.”
They represent that William R. Messick ,Sr., died in January, 18YY, and that the plaintiff, Mary E. Waddill, owns one undivided half of said property, as surviving widow in community, and that plaintiff William R. Messiqk owns the other half as heir of his father.
*1163 They represent that the title to the property is still in the name of William B. Messick, Sr., deceased, and was never sold by him nor by his administrator after his death.
They further represent that Mary F. Waddill was the natural tutrix of the petitioner, William B. Messick — who is now of full age— and that as such tutrix, she administered the estate of the deceased, but never caused the aforesaid property to be sold.
They represent that the defendant, George L. Mayer, claiming to be the owner of said property, took possession of it, and has been exercising acts of ownership over it, and has cut down and used and sold valuable trees or timber therefrom.
That, without any right or title thereto, and with full knowledge of the fact that it belongs to petitioner, he has been and still is, illegally and wrongfully claiming said land as his own, and has sold and is now offering to sell portions of sanie to various persons.
That said Mayer had sold eighty acres thereof to Lucien Guillory, who has possession of same under his pretended title, and has cut down and used the timber of same, and is cultivating the larger part of it.
That said Mayer has, also, sold and conveyed 160 acres of said land to Mrs. Joyce J. Callaham, who has same in possession, cultivating it, and who has used the trees and timber therefrom.
They allege that said Guillory and Mrs. Callaham bought said land from Mayer with full knowledge of the fact that it belonged to your petitioner; and that they are all trespassers and possessors in bad faith, and liable for rents and revenues. They aver that they have been in possession during the last eight years, and the rents are worth five dollars an acre per annum, and that timber cut down and removed is worth the sum of $2,900, for which they are indebted in solido to petitioners.
Then, the following pertinent allegation occurs, to-wit:
“Your petitioners aver further, that the possession and claim to ownership of said land, by the aforesaid persons were only discovered by your petitioner since the last twelve months.”
The petition then concludes with the statement, “that George L. Mayer has not and never had any title to, or right to said land, and illegally and wrongfully took possession of it and exercised acts of ownership upon it;” and that neither of his vendees have any title thereto. The prayer of the petitioners is, that they be decreed the *1164 lawful joint owners of the property and put in possession thereof, and quieted in their title, and that they have and recover $2,900 foT rents, revenues and worth of timber used and destroyed.
Defendant, Mayer, for answer, pleads the general issue first, and then denies that plaintiffs have any right, title or interest in the land claimed.
That if plaintiffs ever had any title to the interest claimed in the lands, which is denied, same is prescribed by the lapse of 1, 2, 3, 5, 10 and 20 years, which said prescriptions are specially urged in bar of plaintiffs’ action and demand.
He further avers that if plaintiffs’ ancestor, William R. Messiek, Sr., deceased, ever had title to the undivided interest now claimed by said plaintiffs in this suit, same passed to him by virtue of the adjudication made at the succession sale of William R. Messiek, Sr., deceased, on the 6th day of December, 1877, which sale is of record in the mortuary proceedings of the succession of said Messiek, and also, recorded in the conveyance records of the Parish of Avoyelles, where the property is situated.
'Further answering defendant, Mayer, avers, that, if the court should hold, that under the aforesaid adjudication to him at said succession sale; but one undivided half interest in and to the property described passed to him as ádjudicatee, then he avers that he became the owner of the other undivided half by virtue of an adjudication at sheriff sale in the suit of J. A. C. Wadsworth vs. Chas. F. Huesman, No. ¿533 of the docket of the parish court of Avoyelles, which said adjudication is made to appear by an act of sale and transfer from Louis A. Joffrion, then sheriff of said parish, to this respondnent, dated December 4th, 1886, and recorded December 27th, 1886, in book of conveyance of said parish.
He further avers_.that said title was judicial and translative of property, and that he has been in the possession thereof under said title in good faith, for more than ten years prior to the institution of this suit; and he specially pleads the prescription of ten years in the maintenance of said title, and against the claims and demands of said plaintiffs.
Defendant further avers, that the- said judicial title can not be legally assailed by said plaintiffs in this action, as the same is a collateral attack thereon, and that said judicial title can be annulled or *1165 set aside only in a direct action instituted for the purpose of setting same aside, contradictorily with him.
He further answers, denying that he is a possessor in bad faith, but shows to the court that every muniment of his aforesaid title rests upon public, judicial sales made by and under the authority of a court of competent jurisdiction in judicial proceedings by public outcry, after due and legal advertisements.
He further avers that being a possessor in good faith, he is entitled, should his title be annulled, to have and recover from said plaintiffs, the price he paid for said property claimed by the plaintiffs, with legal interest thereon in the sum of $1,500 from December 4th, 1886, together with all taxes, penalties and interest paid thereon, amounting in addition to the sum of fifteen hundred dollars.
His prayer is in conformity with his answer, and he demands judgment for the sums specified in the event that his title is annulled.
Lucien Guillory, in answer to plaintiffs’ petition, sets up title derived from defendant, Mayer, making claim for improvements and for the amount of the purchase price paid, calling Mayer in warranty, alleging good faith and á valid title.
Mrs. Calliham makes a similar answer, and a like claim for improvements and taxes paid, and sets up title from Mayer in good faith, and for a valuable consideration, and in the event of eviction, for improvements made and taxes paid.
Roth Calliham and Guillory urged pleas of prescription similar to those of Mayer.
On these issues, the case went to trial, and upon the administration of evidence, the judge ad hoc rendered judgment in the plaintiffs’ favor for one undivided half of the following described property:
Section 10; west half of southwest quarter of section 35; section 21; pouth half and northwest quarter of section 27 ■ all in township 2, range 6; also west half of section 3, township 2, range 5 — the whole including 2,160 acres.
The description of the land in the judgment and that in plaintiffs’ petition are identical, with the exception tl^at the judgment gives one-half undivided interest in south half and northwest quarter of section 27, whereas the whole interest is claimed; but the judgment conforms to the description in the tax eollcetor’s deed to Messiek, with the single alteration or change in the word “and” for the word “of,” to conform to the plat annexed to the tax deed.
*1166 The claim of the plaintiff is, that she, as natural tutrix, administering the succession of her deceased husband, procured an order of court for the sale of an undivided half interest in the property as described in the tax collector’s deed, in October, 1897, for the payment of succession debts, and that Mayer became the purchaser thereof; and as a result of mis-deseription of the property in the tax collector’s deed, he acquired only one-half interest in the south half of northwest quarter of section 27, equal to 80 acres, but did not acquire the south half and the north half of the northwest quarter of section 27, as it should have been described, equal to 400 acres.
In other words, while the description in the judgment of the whole property is just the same as that claimed in the petition, yet by making the consolidation of the legal subdivisions, a loss of 200 acres resulted to the plaintiffs — notwithstanding the judgment corrects the error of the tax deed — -the last mentioned land having remained unsold, by reason of said mis-deseription.'
And, plaintiffs’ further contention is, that under the adjudication tp Mayer of one undivided half interest, he claimed and entered into possession of the whole land covered by the tax deed and judicial sale, and, also, of the land which was not properly described in the tax deed, and not mentioned in the proves verbal of the judicial sale; and that he made sales of portions of same to the other defendants.
TIence, this suit has for its object the recovery from the defendants of the undivided one-half which Mayer did not buy, and the whole of the portion which is alleged not to have been adjudicated at all.
On this statement, it is clear that the defendant, Mayer, acquired at succession sale in 1877 a clear and perfect title to an undivided half interest in all the property described, except the south half and north half of northeast quarter of section 27, which the plaintiffs contend was not sold at all, by reasons of the alleged error of description; but the tenor of the judgment seems to indicate that the lower court entertained the view that the said alleged error enured to Mayer as purchaser, as well as to the plaintiffs — this appearing from the fact that his judgment was in favor of the plaintiffs for an undivided half interest in the whole of the land.
It is further perfectly manifest that Mayer at all events, must be deemed as a joint owner with the plaintiffs in indivisión, and, therefore, possessed of an equal right to enjoy possession, as the plaintiffs are of the other undivided half.
*1167 The three difficulties which the defendants interpose to the demands of the plaintiffs are (1) that they rest their .claim, upon an alleged error of description in a deed bearing date more than 25 years anterior to the institution of this suit, and rely upon a single sketch of the locus in quo purporting to have been made by the parish surveyor, and which is not authenticated in any way or dated or approved by any one; (2) that they assert claim to a half interest in the property which was by the administratix of the succession of his ancestor caused to be sold at public auction more than twenty years ago to the defendant, Mayer, ostensibly as the entire interest of the succession óf Messiek, and in which they have, to all appearances, acquiesced since, and made no complaint of its subsequent sale at auction to the defendant, nor set up any adverse claim thereto; (3) that they ignore and seek Ito avoid the sheriff’s deed of sale under a judgment to the defendant, Mayer, in a collateral manner, notwithstanding they do not assail the judgment as being null and void, though said judgment and sale have been extant, as evidenced by public records, for more than ten years under which the defendants have been in possession.
It is upon these proceedings and sales that the defendants rely in support of their pleas of five and ten years’ prescription.
The argument of the counsel of the principal defendant, Mayer, is, that the legal effect of the sale by the plaintiff, Mistress Waddill, as natural tutrix'of her co-plaintiff when a minor, administering the succession of her husband and his father, made at public auction on December 6th, 1877, was to divest the title of Messick’s heirs and legal representatives to the entire tract of land, one-half of which the plaintiffs now claim, and that same vested ownership and title to the whole, in so far as Messick’s heirs and legal representatives are concerned, in him, as the adjudicatee at that sale.
That there can be no doubt that the purpose of said sale was to dispose of all of Messick’s right, title and interest in and to all the property of which he died possessed.
That soon after his death, in the month of January, 1877, she presented a petition to the court, setting forth the fact of her husband’s death; that he left one minor child, issue of their marriage; that she was entitled by law to be confirmed natural tutrix of this minor child, but that previous to her said confirmation, it is necessary that “all the property, whether separate or community, belonging to said estate *1168 should be inventoried.” She, thereupon, caused a commission to issue as required by law in such cases, a true and faithful inventory to be taken of all the property belonging' to said estate whether it be community or separte, and to make due reiturn of the proceeding's.
That upon this application, the court, on January 31st, 1877, ordered “a notary to take an estimative inventory of all the property of said estate, whether same be separate or community, and, as soon as he shall have done this, to make due return of his proceedings to this court.”
That pursuant to that direction, ¿nd on February 6th, 1877, a notary made and took “an estimative inventory of the property, movable as well as immovable, belonging- to the succession of William R. Mes-sick, etc., in this parish.”
That the inventory, after describing all other property belonging to the succession, concluded thus:
“Nothing more having been found or offered to be inventoried, I close these presents.”
That afterward, on October 30th, 1877, the plaintiff, acting as administratrix, applied to the court for an order to sell the property of the estate to pay debts, “avering that it was involved to a considerable amount, and therefore, it was necessary to sell the property belonging to said deceased.”
That later, on the 6th of December, 1877, the administratrix acting herself as auctioneer under a commission, which, according to her own solemn, judicial admission, directed, authorized and empowered her to sell at public auction, “all property, real and personal, belonging to William R. Messiek, deceased, situated in the parish of Avoyelles.” That, further, according to the proces verbal of the sale, it appears that all the property of the succession was exposed and sold; and after the description of the property in the proces verbal, the natural tutrix states above her signature, that there was nothing more to offer for sale.
That all these proceedings and recitals show, that it was the intention of the administratrix to inventory and sell the property of her deceased husband, and this purpose was manifested by the twenty-one years and more of silence and acquiescence, during which time it was never intimated or suggested by her, or any one else, thalt the entire estate of Messiek liad not been disposed of at that succession sale.
*1169 That during- this long period, the tutrix never attempted to take possession of the land, paid no taxes on it, exercised no acts of ownership over it, and stood by, fully aware of Mayer’s title, and of the fact that he was selling portions to other parties.
That it is a fact worthy of note, that with the sale of succession property above stated to him, all of the active management on the part of the tutrix and administratrix of the succession ceased — she evidently regarding that there was no longer any estate to administer, having filed no account, or made any distribution of funds for settlement with the heir or creditors since.
That, as against all these facts tending to show that it was the intention of the administratrix to sell the entire property out of Messiek’s succession, all that is relied upon 'to prove that only an undivided half interest of the land was adjudicated to him is the three words at the beginning of the description of that tract as given in the inventory, and in the proces verbal of sale.
In both documents, the description is the same (with one important difference to he noted later), that in the process verbal of sale being of the following tenor, viz:
“George L. Mayer being the highest bidder, became the purchaser of the undivided half of 2,160 acres of land, being the whole of section 10, township 2 south, range 6 east; 641 68-100, the south half of the northwest quarter of section 27, township 2 south, range 6 east; and west half of southwest quarter of section 35, township 2 south, range 6 east, 560 67-100; the whole of section 21, township 2 south, range 6 east, 641 20-100 acres the west half of section 3, township 2 south, range 5 east, 321.02- — same being sold in lots of from ten to fifty acres, for the sum and price of eight hundred dollars.”
The description in the inventory is precisely the same, with the difference 'that the last sentence italicized is omitted therefrom.
Thereupon, counsel of defendant, Mayer, says in his brief, page ten, to-wit:
“The plaintiff’s whole case, therefore, is built exclusively upon these three words, “appearing in the inventory and in the process verbal, viz: 'The undivided half.’
“Now if has already been shown that the purpose of the administratrix was to sell all the succession property, and this intention is “strengthened by the description of the property in the proces verbal “of the sale itself; for while it is true tnat the description of the land *1170 “does begin with the words ‘the undivided half,’ yet the language of “the description ¿vhieh follows these words can not be harmonized “with the contention that only an undivided half was sold.”
Counsel then refers to the terms used in the description, thus:
“ ‘Being the whole of section 10’; and ‘it is the whole of section 21.’ * * * And ‘the same being sold in lots of ten to fifty acres.’ ”
And, thereupon, he draws the conclusion that this language evidences the intention to sell the whole, and not the undivided half of the land. '
He then says:
“To conclude upon this part of the case, it appears, therefore, that “the entire description of the land in the proces verbal taken as a “whole and especially in connection with the recitals of the various “documents in the mortuary proceedings and the long silence and “laches of the plaintiffs, point unerringly to the conclusion, that the “entire interest of Messick in the tract described was intended to be “and was in law and fact divested by the sale.”
The further contention of counsel is, that should the court find on the contrary that Mayer obtained title at the Messick successsion sale to one-half interest in the property, then he relies on and urges the adjudication 'to him at the sheriff sale in December, 1886, under writ of fieri facias issued in the suit of Wadsworth vs. Huesman. On this last score, his contention is that the court will find from the record that plaintiff, Wadsworth, under his judgment obtained in that suit, seized the undivided half interest of the property in controversy here to be sold, as that of the judgment debtor, and it was legally advertised and exposed for sale, and defendant, Mayer, became the purchaser on a twelve months’ bond, and that the proces verbal of sale was duly recorded in the book of conveyances.
In the court below, the plaintiff sought to overcome the force of said adjudication by attempting to show that Mayer knew at the time of his purchase that Huesman had no title to the property; but there is no proof establishing that fact; that the only testimony offered for that purpose was that taken in the case of Wadsworth vs. Joffrion, and it merely shows that the attorney for Wadsworth was unable to find any title in Huesman, and. on that account, the proceedings in that case were discontinued. But, it further appears that after the discontinuance of that proceeding, Mayer acquired the judgment of Wadsworth against Joffrion, and subsequently seized and sold the *1171 property under his judgment against Iiuesman; but, there is no proof in the record to show that Mayer was possessed of any knowledge of Huesman’s ownership in the property,
Defendants' counsel says on the subject that certain it is that Mayer was an open bidder at public sale, and became the purchaser on a twelve months’ bond; paid the bond, and received from the sheriff a deed of transfer.
That it has been shown that all this was done and his title was perfected and recorded in the month of December, 1886, eleven years before the institution of this suit.
Upon an examination of the opinion of the judge a quo, we find the' following reasons for judgment, substantially, to-wit:
“That the record discloses that G. L. Mayer bought the undivided half of this property at succession sale of Messick in 1877, and the other undivided half at sheriff sale in 1886, in the execution of a judgment in suit of J. A. C. Wadsworth vs. C. J. Iiuesman — Mayer becoming transferee of said judgment before execution.”
That in 1887, Mayer sold to Mrs. Bentley, 160 acres, and to one Eugene Guillory forty acres.
He then refers to the discrepancy in the legal subdivisions of the land as described in the tax sale to Messick, and holds the question to be one of easy solution, because the description in the deed was explained and interpreted by the plat thereto annexed, showing the error of the tax collector in the deed, and says:
“The plat annexed to said deed must, therefore, prevail. This is further borne out by the computation of acreage, the deed being for 2,064 acres, and, in order to arrive at this estimate, the south half and northwest quarter of section 27, must be embraced; otherwise, there must be a discrepancy in acreage.”
He then observes, that all parties claimed title from a common author. He further states that under the judicial sale in Wadsworth vs. Huesman, he does not think Mayer acquired any title, and, therefore, could not convey any.
He further states that he does not think that the pleas of prescription urged'by defendant Mayer, are good; that of ten years is the only-plea of prescription earnestly pressed by defendant;' but the proof does not show that his possession began by any actual or corporeal possession.
*1172 The property at the time of sale was, principally, unoccupied swamp or woodland, and not susceptible of actual occupancy or possession.
On the foregoing statement of the pleadings and of the opinion of the judge a quo — and which are substantially borne out by the proof in the record — our impression is, that all parties to the present litigation claimed under Messick, Sr., deceased, as the common author; and that he derived title at tax sale.
That conceding the error alleged to exist in the tax deed, we think it quite clear, that same must enure to the benefit of all the transferees of the property of the deceased — the defendant, Mayer, claiming by purchase, and the plaintiffs claiming under the law.
That, inasmuch, as the error made was in the description in the tax deed to Messick, and only discovered and established in the present proceeding, we think that the proper conclusion is, that the effect of the succession sale was to transfer to Mayer either the whole land of the succession of Messick, or, at'least, an undivided one-half interest therein.
That instead of the deficit remaining in the succession, it was conveyed by the sale — the proces verbal of which employed the same description which was contained in the tax deed and in all subsequent proceedings leading up to the succession sale.
It seems quite clear, that it was the intention of the tutrix to inake .a sale of the property of the succession to pay debts of the deceased. It appears from all the proceedings and records, that the sale was intended to embrace all the property which is contained in the inventory, without reservation.
.The .evidence shows that Mayer was of the opinion that he had acquired title to the whole, and it is not inconsistent with these pretentions that he should have purchased any outstanding claim of another person at public sale with a view of confirming his previous acquisition.
And, such we take to be the judicial proceedings and sale in Wadsworth vs. Huesman.
All the foregoing judicial proceedings and sales — that made by the natural tutrix, acting as administratrix, and that by the sheriff— were open, public and notorious, and preceded by advertisements and evidenced .by the records of the conveyance office in the parish where *1173 the property was situated, and, necessarily convey notice to all persons claiming- an interest in the property.
In our opinion, the conclusion is irresistable to the. effect, that the ease should have, been decided in favor of the defendant in the lower court; and we rest this conclusion principally upon the ground that the tutrix administering the succession of her deceased husband, ostensibly and necessarily sold and adjudicated the whole and entire property thereof, leaving no contingent interest- therein, remaining-unsold.
It is a recognized doctrine of this court, which has been pronounced in many decisions, that the husband and partner in community having- died, leaving- a widow and heirs surviving him, and some debts unpaid, the entire community assets are liable for' the payment thereof, and can be sold in his succession for the satisfaction thei-eof, without regard to the residuary rights and interest of either widow or heirs.
In Ricker vs. Pearson, 26 Ann., 391, this statement of the facts of the case is made, viz:
“This suit is instituted by the plaintiff against the purchasers at “these sheriffs sales, the plaintiff claiming that the property was com“munity property, and belonged equally to. his father and mother; “that when his mother died, the community was. dissolved; that his “mother’s share descended to him; that his title thereto has never “been divested, and that he should be quieted therein.”
That extract discloses the exact situation which is presented in the instant case.
The court said:
“Under the authority of Brown vs. Jacobs, 24 Ann., 530; Sadler vs. Kimbrough, 24 Ann., 534; Rusk vs. Warren, 25 Ann., 314, and Phelan vs. Ax, 25 Ann., 379, the plaintiff’s claim must be rejected — the property Laving- been sold to pay community debts.
In such an event, the entire property of the community passes under administration, and becomes liable for sale under an order of court to pay debts.
In that event, a purchaser at public sale thus ordered and made, is protected by the decree of the court ordering the sale, and need not look beyond it.”
In succession of McLain, 12th Ann., 222, the court, through Mr. Justice Merrick, said:
*1174 “We think it results from the whole act (1837) taken in connection with the code, that unless the heirs furnish the executor with money to pay the debts, he' has the same right which the administrator has • * * to cause sufficient property of the estate to be sold to pay the debts, and when he applies to the court for that purpose, like the administrator, he fully represents the succession.
• “The widow, the partner in the community after its dissolution, has a vested interest in it which she may accept, nevertheless her acceptance will no more take the administration out of the hands of the executor or administrator, than will the like acceptance on the part of the heir.
“Before the dissolution of the community by the death of the husband, the wife has only an eventual interest in it. The husband is the head and master of the community, and may sell and dispose of the same by onerous title as he sees fit, without her permission or consent.
* * •» * * * *
“Now as the husband is responsible for the debts of the community, and must answer to the same out of his separate estate, if the community is insufficient, and the wife may "renounce and claim that her paraphernal rights shall be paid out of his estate, the settlement of the community is a natural consequence•of the settlement and payment of the debts of his succession.
• “The funds of the community, out of which the debts are to be paid, ought to be placed in the hands of him who is charged with the payment of the debts, hence the settlement of the succession of the husband naturally carries with it the sale of sufficient effects of the community as are incident to payment of its debts.
# # it # # #
“And, it is thus evident that the administration of the succession of the deceased husband involves with it the administration of the community.
“The testamentary executor could, therefore, rightfully apply for the sale of the property of the community, and the order of the judge decreeing the sale must be considered as a protection to all persons purchasing it.
“As the purchaser at the probate sale acquired all the interest which the widow in community could have in the property, there is no reason why he should not comply with the terms of sale/’
*1175 In Lawson vs. Ripley, 17 La., 248, the court used this language:
“The succession of the husband is, therefore, so far connected with the community as to form together at the time of his death, an entire mass called his estate, which is not only liable for the payment of the common debts, but also for the portion of the wife or her heirs to the residue, if they have not renounced.”
The foregoing cases were cited with approval in the succession of Lamm, 40th Ann., 312.
Similar views were entertained and expressed in this court in Verrier vs. Sheriff, 48th Ann., 717; Abes vs. Levy, 48th Ann., 41; Hewes vs. Baxter, 46th Ann., 1,281; Succession of Hooke, 46th Ann., 353, and Landreux vs. Louque, 43rd Ann., 234. See Weil vs. Schwartz, No. 13, 183.
In succession of Cason, it was said “that the community creditors are under no necessity to provoke its liquidation through the medium of the wife’s succession, because it is settled they may disregard the wife’s interest, and proceed directly against the community property in the possession of the husband contradictorily with him alone.”
The proof in the record disclosing — and which is in great part confirmed by judicial admissions — that the surviving widow, as natural tutrix administering the succession of her husband, having taken an inventory of the property of the community, and procured an order for its subsequent sale for the purpose of paying debts of the community, the sale made was essentially a sale of the community property, both of the deceased husband and the surviving wife, which under the decisions necessarily conveyed a full title to the purchaser of all the interest which the community had in the property without regard to any residuary interest of either the surviving widow or heir.
That, such judicial proceedings and sale necessarily included the interest of the surviving widow, and necessarily concluded any claim of the heirs of the deceased.
The terms of the law come to the aid of the judicial proceedings themselves, and serve to perfect and consummate a valid sale.
The sale haviiig- been founded upon an order of court, procured by the tutrix, confessedly for the purpose of paying debts of the community, the purchaser was not bound to look beyond the order of court directing the sale to be made, but had a right to rest upon it, as a foundation of title to the property.
*1176 This question has been settled by so many decisions of this court founded upon the provisions of our code, that it seems quite unnecessary to cite additional authority, or recite any additional facts in support thereof.
It is therefore ordered and decreeed that the judgment and decree appealed from be annulled and reversed; and it is further ordered that the demands of the plaintiffs be rejected at their cost in both courts, and that the defendants be confirmed and quieted in their title and possession of the property in dispute.