(86 South. 878.)

No. 15,031.

GRAY v. COCO.*

(April 25, 1904.)

VENDOR AND PURCHASER—ACT OF SALE—ERROR
IN DESCRIPTION—POSSESSION OF VEN-
DEE—SUBSEQUENT PURCHASER.

1. Where there is a difference between the descriptive language used in an act of sale and a diagram prepared under the direction of the vendor, with reference to which immovable property is sold, and the vendor puts the vendee in possession of the property called for by the diagram, and all the facts and inferences disclosed or suggested by the evidence point to the conclusion that the vendor intended to sell, and the vendee to buy, the property of which the latter is thus put in possession, a litigant, who, after the lapse of years, buys, without warranty and with a stipulation against the return of the price, from the heirs of the original vendor, is in no better position than such original vendor, and cannot recover, by reason of error or failure of description, any part of the property so sold.

(Syllabus by the Court.)

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; Gregory Horatio Couvillon, Judge.

Action by David M. Gray against Paulin J. Coco. Judgment for defendant, and plaintiff appeals. Affirmed.

Adolphe J. Lafargue and William Harris Peterman, for appellant. Adolph Valery Coco, for appellee.

## Statement.

MONROE, J. This is a petitory action for the recovery of 110 arpents of land, more or less, fronting on Bayou des Glaises, in the parish of Avoyelles, said to have been purchased by the plaintiff, January 23, 1903, from the heirs of P. G. Gibert, and of which it is alleged that the defendant had taken illegal possession some three years before said purchase. The defendant denies the validity of the title asserted by the plaintiff, and sets up title derived from P. G. Gibert, and possession thereunder in himself and his

immediate authors during a period of about 17 years. The facts, as disclosed by the evidence in the record, are as follows:

Prior to 1866 Celeste Couvillon, widow of Leufroy Mayeux, owned several tracts of land, aggregating a little more than 700 acres, in the parish of Avoyelles. The largest of these tracts, known indifferently as the "Leufroy Mayeux Plantation" and the "Celeste Couvillon Plantation," and containing approximately 504 acres, lies upon the south side of, and adjacent to, Bayou des Glaises, and is bounded on the west by lands which the plaintiff herein has inherited from his parents. In July, 1866, Celeste Couvillon (Mrs. Widow Leufroy Mayeux) sold to her son L. L. Mayeux, who gave notes for the price, the land here claimed, being a strip; seven arpents in width, forming the west side of the tract thus mentioned, and upon which are situated the residence, quarters, and other plantation buildings, save perhaps the ginhouse.

Very shortly after this sale Mrs. Mayeux died, and in April, 1867, her administrator sold the remainder of the tract, together with the other tracts owned by her, to Valery L. Mayeux, L. L. Mayeux, Xavier Mayeux, and Ducloset Scallan, who also gave notes for the price. The notes thus given fell into the hands of the commercial firm of Beraud & Gibert, of New Orleans, who in April, 1876, caused the property upon which they bore to be sold in satisfaction thereof, and became the purchasers of the same; and in December of the same year they also purchased at sheriff's sale, made under a judgment obtained by the administrator against L. L. Mayeux, that portion of the plantation which stood in the name of the latter. Thereafter Beraud died, and in July, 1881, his heirs sold the interest inherited by them in the firm of Beraud & Gibert, including the interest in the property in question, to P. G. Gibert, the surviving partner, who then employed M. J. Voorhies, and afterwards L. O. Bordelon, to man-

*Rehearing denied June 6, 1904.

age said property for him. Bordelon took charge in 1885, and lived in the residence, situated, as we have seen, on that portion of the plantation which is here in controversy.

In July, 1887, Gibert having employed him for that purpose, C. P. Couvillon, parish surveyor, made a plat or diagram, and furnished a certificate, of which the subjoined are copies (the property in controversy being indicated as lots 1 and 3), to wit:

lot 8, and that the numbers should run from 1 to 11. It may be remarked, too, in this connection, that, whilst he refers to the whole property as the "Leufroy Mayeux Plantation," we understand that name to have been applied rather to the larger tract, which was also called the "Celeste Couvillon Plantation," and that we do not understand that the sale to L. L. Mayeux, or those subsequently made, effected any change with re-

The yellow shading referred to in opinion of court is here shown by the black shading.

"State of Louisiana, Parish of Avoyelles. By request of Pierre G. Gibert, Esq., of New Orleans, I have drawn the above diagram, showing the form and location of the tract of land known as the Leufroy Mayeux Plantation. The said tract is represented above by the several lots shaded yellow and numbered from 1 to 12. * * *

"The total area of the above several lots is, as per government surveys, 706.42 acres.

"Marksville, Avoyelles, La., July 22, 1887.

"[Signed] C. P. Couvillon, Par. Surveyor."

The lots numbered from 1 to 12, save lot 8, which does not appear, are all shaded yellow on the sketch;[1] the remainder are unshaded, and the surveyor explains that there is no

spect either to its name or to its use, as a plantation, save that, after its acquisition by Gibert, it was also known as the "Gibert Plantation."

A few months after the diagram had been made, C. J. Matthews visited and was shown over the plantation by Bordelon, who was living there, as Gibert's agent, and was then cultivating or renting it for Gibert, up to Gray's line on the west; and thereafter, concluding that it was to be sold, Bordelon came to New Orleans and asked Gibert whether he could continue to stay there, to which Gibert replied that he was sorry not to be able to keep him on the place, but that he

---

[1] The yellow shading is shown in black shading in the printed diagram.

had sold it to Matthews, and shortly afterwards, being informed that the sale had taken place, Bordelon delivered possession to Matthews.

The act of sale from Gibert to Matthews was passed in New Orleans in November, 1887, and, describing the property, reads in part as follows:

"1. The Celeste Couvillon Plantation, situated on Bayou des Glaises, in said parish of Avoyelles, containing, more or less, 394 acres, bounded; North, by Bayou des Glaises and land now, or heretofore, owned by Mrs. William Voorhies; South, by land now, or heretofore, belonging to Mrs. W. B. Crenshaw, A. M. Gray and W. L. Voorhies; East, by land now, or heretofore, belonging to W. L. Voorhies; and West, by lands now, or heretofore, belonging to L. L. Mayeux.

"2. A certain tract of land," etc.

"3. A certain tract of land," etc., "together with the buildings and improvements thereon and appertaining thereto, as will more fully appear by reference to the diagram drawn by C. P. Couvillon, Parish Surveyor, under date of July 22, 1887, and hereto annexed for reference."

In the inventory taken in the succession of Mrs. Mayeux shortly after the sale of the 110 acres to L. L. Mayeux, the description of the plantation reads: "The plantation upon which the deceased last resided, situated upon the right, descending, bank of the Bayou des Glaises, in Avoyelles Parish, containing 394 acres, more or less, bounded," etc., as above, and in the sheriff's deed to Gibert, of April, 1876, it reads: "The plantation of Celeste Couvillon, situated on Bayou des Glaises, in Avoyelles Parish, containing 394 acres, more or less, bounded," etc., as in the deed to Matthews. In neither of these descriptions, however, are the parties referred to any annexed diagram for further information. Matthews remained in possession as owner until March 23, 1889, when he sold, according to the description by which he had acquired, save as to the reference to the diagram, to Latour & Co., who upon the same day, and by the same description, sold to the defendant; all of the sales mentioned having been made for lump sums, and not by the acre. The defendant at the date of his purchase succeeded to the possession, up to the Gray line on the west, which Matthews had enjoyed, and remained undisturbed therein until the filing of this suit, in February, 1903. In January, 1903, the plaintiff, accompanied by his attorney, had called upon one of the heirs of P. G. Gibert, who died in 1888, to negotiate for the purchase of the 110 acres here in question; and they were referred to the legal adviser of the heirs, who testifies, without attempt at contradiction, in part, as follows:

"They explained that, from a very careful examination made by them, it appeared that that land was not covered by the description contained in the acts of sale from Gibert under which the present possessor held and would have to claim title. They went on to explain that it was a mere chance that Mr. Gray was buying; that he would have to enter upon lengthy and expensive litigation; that the land was of very little value except to Mr. Gray himself, who had, as I understood him to say, other lands adjoining this parcel; and that the result would be doubtful. Nevertheless Mr. Gray was willing to pay, and offered, $400 for the rights, such as they were or might be, of the heirs of Gibert. * * * I then requested them to let me see my clients, and to call the following day. They came the next day at the appointed hour. I told them the heirs had no knowledge at all of the existence of any land on the Bayou des Glaises still belonging to the late Pierre Gustav Gibert, and that they (the heirs) believed, on the contrary, that their father had sold, long ago, all the land or interest he had in the parish of Avoyelles. I did not hesitate to express my own opinion or impression about the matter, which was that there was simply an error in the description or measurements as stated in the acts of sale mentioned. * * * It was well understood * * * and expressly stated by me, on behalf of my clients, that the vendors did not claim to have any title to the parcel of land in question, and rather believed that they had no title to it, and that they would only sell such rights as they might have, if any rights they had at all. Mr. Gray was perfectly willing to buy with that understanding and under those conditions."

It further appears that it was agreed that, whilst an act of sale should be executed in the usual form, a separate instrument should be signed to represent the real contract, which instrument reads as follows, to wit:

"New Orleans, La., Jan'y 23, 1903. The heirs of P. G. Gibert, having this day sold to Mr. David M. Gray, undersigned, a certain tract of land on Bayou des Glaises, as per act passed before Charles J. Theard, Notary Public, and the said act containing the usual stipulation of warranty by the vendors. It is understood, and here expressly declared, that the vendors do not warrant the title, but sell only such rights and interest in, and to, such property as they have, or may have, and that, in no event and under no circumstances, shall they ever be bound to David M. Gray, or his heirs or assigns, for the return of the purchase price. ($500) or any part thereof. And, in no manner whatever, shall they ever become liable to said David M. Gray, his heirs or assigns, on account of said sale."

The 110 acres which was the subject of this negotiation, and is here in dispute, appears to be worth about $12,000 with, and $9,000 without, the improvements.

### Opinion.

There can be no doubt that P. G. Gibert intended to sell, and that Matthews intended to buy, the land here claimed. It is true that, by the language of the act which was signed by them, the property sold is described as containing 394 acres, more or less (about the number left after deducting the 110 acres in controversy), and it is also true that the lands "now, or heretofore, belonging to L. L. Mayeux" are given as the west boundary of the property sold. Upon the other hand, whether the property sold was known as the "Leufroy Mayeux Plantation," or the "Celeste Couvillon Plantation," or the "Gibert Plantation," the land here claimed has always formed an integral and indispensable part of it, for it was there that the residence, the quarters, and the other plantation buildings with the possible exception of the ginhouse, were situated; nor did the sale from Mrs. Mayeux to L. L. Mayeux in any respect change that relation. That sale was made July 19, 1866, entirely on credit. The first note, for $200, was made payable in July, 1869, and the other notes, for like amounts, during the four years following. The vendor continued to live on the property, and died there soon after the sale. The vendee never paid any part of the purchase price. The character and name of the property as a plantation were never lost, and more than 10 years after the recorded title had been reunited it was sold, for a lump sum, by an act which described it as the "Celeste Couvillon Plantation * * * together with all the buildings and improvements thereon and appertaining thereto," and which act, for further and fuller information as to "the form and location" of the property sold, refers to a diagram prepared under the directions of the vendor; upon which the land here claimed is fully identified as part of that property. More than this, the plantation, including the 110 acres in question, and the buildings thereon, as its most conspicuous and valuable part, was delivered to the vendee, as a unit, by the agent of the vendor, acting under specific instructions from his principal, to the effect that he (the agent) could no longer remain there, because the property had been sold. The vendor lived but a few months after the transaction had thus been closed, and, dying, left his heirs under the impression that he had sold the entire Celeste Couvillon Plantation, or Gibert Plantation, together with all other property owned by him in the parish of Avoyelles. The heirs, after a lapse of 17 years, were still under that impression, and, through their representative, distinctly informed the plaintiff, when he insisted on buying their "rights," such as they might be, in and to the land here sued for, that they had no claim to assert, and were not aware that they had any rights to sell.

Under these circumstances, the plaintiff cannot recover, because, having purchased only the rights, such as they might be, of the heirs of Gibert, he is in no better position than they; and they are in no better position than would be Gibert, if he were alive, and Gibert could not recover, because, in view of the evidence adduced, the doubt as

to his intention and that of his vendee, suggested by the difference between the description contained in the act by which he made the sale to defendant's author and that contained in the diagram with reference to which that sale was made and the vendee put in possession, must be resolved in favor of the description as contained in the diagram, and of the vendee. Canal Bank et al. v. Copeland, 6 La. 543; Millikin v. Minnis, 12 La. 546; Kirkpatrick v. McMillen et al., 14 La. 497; Palangue v. Guesnon; F. W. C., 15 La. 311; Municipality No. 2 v. Palfrey, 7 La. Ann. 497; Buisson v. McNeil, 9 La. Ann. 445; Wurzburger v. Meric, 20 La. Ann. 415; Whitney, Adm'r, v. Saloy, 26 La. Ann. 41; Burke v. Wall, 29 La. Ann. 46, 29 Am. Rep. 316; Brown, Tutor, v. Broussard et al., 43 La. Ann. 962, 9 South. 911; Bryan et al. v. Wisner, 44 La. Ann. 832, 11 South. 290; Gladdish et al. v. Godchaux, 46 La. Ann. 1571, 16 South. 451; Messick et al. v. Mayer et al., 52 La. Ann. 1176, 27 South. 815.

The learned judge of the district court, by whose clear and able opinion we have been aided, reached the conclusion thus expressed, and the judgment rendered by him is affirmed.