On Rehearing.
 

 BRUNOT, J.
 

 This case is sufficiently stated in the original opinion. When that opinion was handed down, similar applications for a rehearing were filed by plaintiff and
 
 *1002
 
 defendants. Affidavits are attached to both applications. These affidavits affirmatively show that the value of the property sued for is considerably in excess of $2,000. Therefore, this court alone has appellate jurisdiction of the case. Both applications conclude with the following prayer:
 

 “Wherefore, petitioner prays that the decree herein rendered on May 20th, 1929, be set aside, and that, if necessary, a rehearing be granted.for that purpose.
 

 “Further prays that this cause may ' be immediately considered and decided by the court upon its merits, and petitioner prays for all necessary orders and for general and equitable relief.”
 

 On the showing made in the applications a rehearing was granted, and the prayer of all parties to the suit for the immediate rendition of a judgment on the merits is a final submission of the case upon the original argument and briefs. All of the issues presented by the pleadings were carefully considered by the learned trial judge, and his •conclusions are concisely, but accurately, stated. We approve his reasons and findings and adopt his opinion as our own. It is as follows:
 

 “This is a petitory action in which the plaintiff, Maginnis Land & Improvement Co., Limited, seeks to recover a tract of land situated between the public road along Bayou Lafourche and the water’s edge of said Bayou, commonly known as ‘batture property.’
 

 “The defendants, ten in number) are each in possession of different parts of said property.
 

 “They had each filed an exception of misjoinder, which however, was never tried. By going 'to trial, after having joined in a common defense, I take it that the exceptions have been waived.
 

 “Nine of them have filed pleas of ten years’ prescription, based on possession under titles translative of property.
 

 “The answer of each of them sets out a title to each one’s respective tract, including all. the land within a front boundary reaching to Bayou Lafourche, and they accordingly each ask to be decreed the owner of their respective properties, as so bounded.
 

 “Plaintiff was the owner of the St. Elizabeth plantation which it acquired on January 23, 1900. They had it surveyed and subdivided into smaller tracts after they bought it and a map, representing the survey was made on April 15, 1902, and was subsequently amended May 23, 1903. The original and amended maps were recorded in the Conveyance Records of this Parish.
 

 “The defendants’ titles are all derived from the plaintiff herein, the original sales all dating back in 1903 befaré the closing of Bayou Lafourche.
 

 “All the properties are described as having a front of so many feet on Bayou Lafourche and in each deed also reference is made to the map of Coleman and Malochee of April, 1902. Each tract is identified by the particular letter or initial it bears on the map and the dimensions in the title correspond with those on the map. Some of the deeds contain sketches or abstracts from the map showing the particular tract conveyed in that particular deed.
 

 “The map itself and the diagrams incorporated in some of the deeds show that each tract fronts 'on the public road along Bayou Lafourche, and not on Bayou Lafourche itself as recited in the descriptions in the deeds.
 

 “There evidently then is a discrepancy between the deed and the map or diagram in each case, making the description itself uncertain. In such case, the law governing us is to be found in those decisions which controlled us in the case of South Louisiana Fair Association v. Omer Robert, decided in this court a few months ago and recently
 
 *1004
 
 affirmed by the Court of Appeal, First Circuit, as appears in the reported decision, 3 La. App. page 505.
 

 “In announcing the conclusion reached by the court in that case, Justice Paul Leche, writer of the opinion, says:
 

 “ ‘There is an apparent conflict between the description construed in connection with the conveyance record and that shown by the lines on the map of survey by Webb in 1917, and the single question involved, is which should control. That question, in our opinion, has passed the stage of uncertainty and is now settled by the decisions in Canal Bank v. Copeland, 6 La. 548; Gray v. Coco, 113 La. 33, 36 So. 878; Perry v. Board of Commissioners, 132 La. [415], 61 So. 511; Werk v. Leland University, 155 La. [971], 99 So. 716. The diagram or map referred to controls the description.’
 

 “That decision, with the authorities cited, makes that point in. the present case decisive in favor of the plaintiff.
 

 “The defendants contend, however, that they have a title to this batture property by what is known as the right of accretion.
 

 “When they acquired their respective tracts of land, Bayou Lafourche was an open and navigable stream, and, their properties being contiguous or adjacent thereto, they were, they say, riparian owners with all rights to become owners of the alluvial formations from the soil thrown on the banks by the water from this bayou.
 

 “The court has been referred to numerous decisions of our Supreme Court on this question and has read them all very carefully. In each case it appears to me that the court was governed by the different facts or circumstances as they arose, but from them all I gather that the general principle of law applicable is to the effect that when a batture in front of the riparious owner becomes visible above the surface of the water at its ordinary stage, in such a way as to givei it a reasonable appearance of permanence, it then becomes susceptible of ownership and becomes part of the property ‘of the owner of the soil of the shore to which it is attached, subject only to the right of use established by law in favor of the public.’
 

 “The only conflict, as I am able to see, that existed in the eases referred to was with reference to what stage of water in the stream had to be taken into consideration in determining what became alluvion.
 

 “Any difference of opinion which may have existed, however, might well be said to have been settled by the decision of the Supreme Court in the case of State v. Richardson, 140 La. 329, 72 So. 984, in which the former opinions of the court are thoroughly discussed and the ‘ordinary stage’ of the water is definitely stated to be the level which should be used with reference to the formation of battures.
 

 “The law having been thus stated, as I construe it, what are the facts in this case to which it must be applied?
 

 “The evidence of the only witness who testifies about the matter is plain that prior to 1903, before the original sales were made of these properties which now belong to these defendants, a batture existed, and by the removal of the levee, a distance of about 170 feet back, it was correspondingly increased to that extent. He further testifies that the land on the batture side was much higher than that on the other side of the levee.
 

 “With that fact in mind, it is evident that this property was the result of alluvial formation, and became susceptible of ownership by the plaintiff in this case, or their authors in title, and, as such, was their property on the dates of the various sales of the original tracts now belonging to the defendants herein. It was not embraced and con
 
 *1006
 
 veyed in the deeds from which they derive their titles and forms no part thereof.
 

 “Having reached this conclusion, all acts of possession shown, and admitted to have been exercised by the defendants, cannot avail them under the pleas of prescription filed by them, and they will therefore be overruled.”
 

 Having adopted the opinion and findings of the trial judge as our own, it would serve no useful purpose to detail and discuss the' several contentions of counsel for defendants, which were ably urged and are reiterated in his brief. For these reasons the judgpaent is affirmed at appellants’ cost.
 

 O’NIELL, C. J., takes no part.