| 23 | 19 |
| 70 | 429 |

## GRAHAM VS. ROARK.

The owner of slaves is responsible for the trespass of his slaves, in cutting down and destroying the growing crop of another, and in throwing down and carrying away the rails with which his lands are fenced, though such trespass be committed in his absence, and by the order of his overseer.

No question is presented to this court upon the admission of evidence, where a motion for a new trial is made, and the admission of such evidence is not made one of the grounds of the motion for a new trial.

Where a person enters the lands of the United States, he becomes the owner of every thing then attached to the freehold—such as growing crops and fences.

*Appeal from Calhoun Circuit Court.*

Hon. JOHN C. MURRAY, Circuit Judge.

GALLAGHER and KNIGHT, for the appellant.

The appellant is not liable for the trespass complained of in this action (though the owner of the slaves,) he not being present at the time, having no cognizance or knowledge of the matter, and never having approved of it. The whole matter being done wholly and solely by Harrold, and under his direction, he is alone liable; he being, in every view of our law, the " master or owner " of the slaves when committing the trespass. The master is liable in trespass for the act of his servant only in consequence of his command; and is not liable in *tort*, in the absence of proof of his command.

FARRELLY & FINLEY, for the appellee.

The statute, *sec. 7, chap. 174, p. 1062, Gould's Digest*, provides that if the slaves are in the employ or hire of any person other than the owner, such person shall be liable. In this case the slaves were not in the employ of any person other than the owner, but of the owner himself, under the management of the overseer; and if, in committing the trespass, the overseer acted beyond the scope of his authority, he was a co-trespasser with the slaves, and was liable himself, but that would not relieve the master from the responsibility imposed by the statute.

Mr. Justice FAIRCHILD delivered the opinion of the court.

In August 1856, the slaves of the appellant, acting under the direction of his overseer, cut down and carried away and destroyed the corn and peas that were growing upon a piece of land belonging to James King, who, being dead, is now represented in this suit by his administrator, the appellee; and also threw down and carried away the rails with which the land was fenced. For these injuries the appellee brought this suit against the appellant, founded upon the fifth section of *ch.* 174

*of Gould's Digest*, which provides that for the commission of such trespasses, as have been mentioned, by slaves, the master or owner is liable to the party injured for the recovery of single damages, the recovery to be enforced under the regulations prescribed in the preceding sections of the act. The trial was had upon the issue of not guilty; the verdict was for the plaintiff, judgment was rendered against the defendant and he appealed to this court.

The appellant was absent from the state when the slaves committed the trespasses complained of, and the evidence shows that upon his return he expressed his regret for the acts done by his slaves—his disapprobation of the conduct of the overseer in causing the negroes to destroy the growing crop and throw down the fence. On account of this absence of the appellant and the conduct of the overseer, it is contended that the overseer, and not the owner of the slaves, is the proper person to be held to responsibility.

The object of the statute is to secure the owners of growing crops and of inclosures from the injuries that might be committed by slaves, without the consent of the master or owner; for if the trespasses should be committed by the slaves under the direction of the master or owner, he would be liable as if they were committed by himself; that is, for treble damages sustained by the destruction of the crop, and for double damages sustained by reason of the fence being thrown down, with the penalty of five dollars for each throwing down of the fence. If the slaves had committed the trespass of their own will, without having been directed thereto by the overseer, no question of the propriety of the action against the appellant could have been raised; for the statute plainly attaches to the master a responsibility for the enumerated trespasses of the slaves. The law rightly concludes that when a loss has been sustained by the wrongful acts of slaves, it shall be borne by their owner rather than by the party injured; withdrawing the case from the operation of the general rule recognized in *McConnell vs. Har-*

*deman,* 15 *Ark.* 158, that masters are not answerable for the vicious acts of slaves, except as made so by statute. And we think the owner of the slaves can be in no better position by the commission of a trespass by his slaves, acting under the direction of an overseer, than if the trespass had been the unprompted act of the slaves. The grievance sustained by the injured party results from the acts of the slaves; the inducement under which the slaves act is not material, unless done under the direction of the master, or owner, when the act becomes his own, and is to be recompensed under the first and second sections of the act; or unless the slave be in the employ or hire of some other person than the owner, when the accountability of the permanent master is transferred to the employer or hirer, who, under the seventh section of the statute, in becoming the temporary master of the slaves, for the time, assumes the responsibility of an owner. But an overseer is not such hirer or employer, as is meant in the seventh section. Slaves acting under the direction of an overseer, are in the employment of their master; they are not under the hire of the overseer.

There is no ground for the proposition contended for by the appellant, and which Harrold, the overseer, by his testimony, seems willing to concede, that the appellee must exchange defendants, by holding the overseer to account for the acts of the slaves of the appellant while in his own employment, and when the rails thrown down from the fence of King are upon the farm of the appellant, and when his mules have eaten up the corn that was cut from King's field. There would be more reason in holding that the direction of the overseer would bring the acts of the slaves within the sixth section, making the owner responsible as if the direction had been given by himself. This case, however, proceeds only for single damages, and the appellant is not injured in being held only to such damages, even if he might have been sued for treble damages, and for the double damages and penalty provided for in the

first and second sections of the act; inasmuch as a recovery in this suit, under the fifth section, will bar any attempted recovery for any thing done by his slaves, though done in obedience to the order of his overseer.

It might be conceded that under the general law, Harrold, the overseer, would be liable for the whole damages which he procured the slaves to commit, and that the owner would not be liable for wrongs not commanded or participated in by himself, but the appellee preferred an action upon the statute to the common law proceeding; adopted a remedy that looked to the known responsibility of the owner of the slaves, and avoided the possible irresponsibility of the owner's hireling.

There was no misjoinder of causes of action, as only single damages were recoverable for each sort of trespass complained of in the declaration.

The point made upon the alleged illegality of the evidence of removal of the rails cannot be sustained, as that was waived by a motion for a new trial, in which the admission of that evidence is not charged as a ground for new trial.

The verdict was not against the evidence, was in conformity to it, both in being for the plaintiff and in its amount, and was not against law as construed in this opinion.

King entered the land on the 25th of July, 1856, the trespasses were committed on it in the next month. When he bought the land of the United States the crops and fences upon it were his. *Floyd vs. Ricks*, 14 *Ark.* 290, 292; *McFarland vs. Mathis*, 5 *Eng.* 562; *Gibbons vs. Dillingham, ib.* 13. *Brock vs. Smith*, 14 *Ark.* 436, is not in conflict with these cases, and does not deny the right of King to the crop and improvements upon the land he entered. In that case the trees were severed from the soil and had become personal property before the land was entered. On page 435 the court expressly affirm *Floyd vs. Ricks*, and distinguish it from the case under consideration.

In refusing the instructions asked by the appellant, and in giving its general charge, the Circuit Court did not declare the

law to be inconsistent with our exposition of it, and upon the whole record the judgment is affirmed.

Mr. Justice COMPTON did not sit in this case.