(35 South. 539.)

No. 14,658.

BAGLEY v. ROSE HILL SUGAR CO. et al.

(June 22, 1903.)

VENDOR AND PURCHASER—CONTRACT OF SALE
—DESCRIPTION OF PROPERTY—PAROL EVI-
DENCE—SALE OF PLANTATION—FENCES.

1. The terms and conditions of the alienation of real property are susceptible of all the modifications which the will of the parties can suggest, except such as are forbidden by law (Civ. Code, arts. 1764, 2013), and courts are bound to enforce them as made. They cannot widen or restrain the terms and conditions of a contract because they may be of unusual character and apparently unreasonable.

2. Where, in an act of sale, the property is described as a "certain sugar plantation minutely described, together with all the buildings and appurtenances thereof and thereunto in any manner appertaining," but in a later clause it is declared that the "appurtenances included in and covered by this sale are the different items mentioned in the annexed list marked 'A,' which is made a part of this act,"

the court is without authority to ignore this clause and list, and must give them effect when the appurtenances and improvements which were to be included in the sale are expressly and specially enumerated in the list attached to the act of sale. Others are excluded, except in so far as, from the terms of the list itself, particular objects or articles could be shown to fall thereunder.

3. If a particular object is found mentioned in the list as one of the improvements conveyed, the purchaser is authorized to establish by parol that certain articles were necessary and proper to give completeness to that object. So, also, where the expression etc.—et cetera—is found in one part of the list in describing the improvements covered, he is authorized to show that certain articles or objects fall under that term as used and in the place it was used.

4. Parol evidence is not admissible against or beyond what is contained in written contracts, nor on what may have been said before, at the time of making them, or since, but it is admissible to ascertain the nature of the subject to which the instrument refers. Bayley v. Denny, 26 La. Ann. 257.

On Rehearing.

5. Where a plantation is sold, together with the appurtenances thereto belonging, and in the act it is stated that the appurtenances included in the sale are mentioned in a list annexed to the act, and this list does not include the fencing on the plantation, the fencing passes nevertheless with the land; the fences of a plantation being part and parcel thereof, and necessarily passing with it, unless the contrary is declared in plain terms.

(Syllabus by the Court.)

Appeal from Seventeenth Judicial District Court, Parish of Vermilion; Minos T. Gordy, Jr., Judge.

Action by John J. Bagley against the Rose Hill Sugar Company and others. Judgment for plaintiff, and defendants appeal. Modified.

Saunders & Gurley, for appellants. S. P. Watts, P. S. Gidiere, and Clegg & Quintero, for appellee.

Statement of the Case.

NICHOLLS, C. J. On the 25th of May, 1901, by act before George W. Summers, notary public in and for the parish of Vermilion, Mrs. Elizabeth Cluney, wife of Martin Bagley, authorized by her husband, and John J. Bagley, represented by his attorney in fact, Martin Bagley, sold to the Rose Hill

Sugar Company, a corporation represented in said act by its attorney in fact and general manager, Joseph B. Chaffe, a certain sugar plantation declared in the act to be situated in said parish, on the east bank of the Bayou Vermilion, "together with all the buildings and improvements thereon, and all the rights, ways, servitudes, prescriptions, privileges, and appurtenances thereof and thereunto in any manner appertaining, and more particularly described" as set out in the act. After giving particular descriptions of different tracts of land, the act recited that "all the above-described lands are embraced and included in the lines of survey made of the Ramsey Plantation by Romaine Frances, surveyor, as shown by plat to be hereto annexed," and vendors declared that "it was their intention and purpose to convey in this deed all the land described and comprised in said plat. The appurtenances included in and covered by this sale are the different items mentioned in the annexed list marked Exhibit 'A,' which is made a part of this act."

After this act of sale was executed, differences arose between the vendors and vendees as to what property (other than the lands themselves) was covered by the sale. Vendees insisted that the list annexed to the act was merely designed to give a general description of the things upon the property sold, and not for the purpose of excluding from the sale all articles not specifically enumerated therein.

The act of sale was the culmination of negotiations which had been carried on before for a very considerable time between Martin Bagley, acting for the owners of the property, and I. Hechlinger, president of the Rose Hill Sugar Company, looking to a sale to the company. Bagley had made a number of visits to New Orleans for that purpose. At his interview with Hechlinger he presented to him the following writing:

"Description of Ramsey Plantation and Improvements.

"Ramsey Plantation is situated on the left bank of Vermilion river, five miles below Abbeville, the county seat of Vermilion parish, La., and consists of 1,186 arpents of land, 600 of which is in cultivation, there being 150 arpents of plant cane, 150 arpents of stubble, balance in corn; the remaining arpentage is high, well-wooded, and susceptible of cultivation:

1186 arpents at $40.00......... $ 47,440 00

*Improvements.*

One frame sugar house or factory.
One 4' 6" and 5' mill (6 rollers),
One engine 18"x48". Engine new, mills double geared, gearing new.
Five 60" boilers 24' long 6' riveted tubes.
　　2 in coal burner
　　3 in bagasse burner.
4 Iron clarifiers 3" copper tubes, each 1,100 gallon capacity.
3 6' 6" copper evaporators.
1–500 square feet filter press.
Two latest improved Hepworth centrifugals.
6 large syrup tanks.
150 sugar wagons.
The necessary juice, syrup, boiler feed and molasses pumps.
One 7' 4" dry vacuum pan, pumps, etc.
One Baldwin sugar shaker, elevators, conveyers, etc.
Estimated to be worth.......... 40,000 00

Sugar factory and outfit valued at $ 87,440 00

3/2 miles of 3 ft. gauge railroad, 16' & 20' steel, valued at $2,500 per mile ..................... 11,250 00
46 railroad cars at $50.00........ 2,300 00
18 mules (young) at $150........ 2,700 00
One dwelling house.............. 3,500 00
18 double cabins................ 1,800 00
4 tenant houses................. 1,000 00
One store building 40x48........ 1,000 00
4 barns and stables to hold 4,000 bbls. of corn, and to stable 80 mules for plantation and tenants 1,500 00
Boarding house, sleeping house, office, cooper shop, two plantation scales, carts, plows, cultivators, hoes, gear, etc................ 1,200 00

$113,690 00

"I will accept $40,000.00 for the above property under the conditions of taking or giving $7.50 per arpent for stubble and $10.00 per arpent for plant cane, for shortage or over as above specified on cane. This proposition left open until April 8/1901 to Eli Wise or assigns.

　　"[Sd.]　J. Martin Bagley, Agent.
"Mch. 29/1901.
"Witness:
　"S. W. Broussard,
　"Geo. W. Summers."

On the 21st of May, 1901, the following instrument was executed:

· "New Orleans, May 21, 1901.

"The Rose Hill Sugar Company agrees and hereby binds itself to buy the 'Ramsey' Plantation, in Vermilion parish, Louisiana, from Mrs. Martin Bagley and John J. Bagley, represented by Martin Bagley, agent, for forty-three thousand dollars (43,000.00) with all the equipment and appurtenances thereof as described in the offer to sell said plantation, of date May 4, 1901, attached hereto; said vendors are also to transfer, as a part of said plantation, all rights of way for the tramway as now built or projected; and said vendors are also, as a part of this agreement, to transfer to the Rose Hill Sugar Company the mortgage note of Michaels & Grosnecker, and to take therefor the note of the Rose Hill Sugar Company for the same amount, payable March 4, 1901, with 8% per annum interest until paid, with said two notes as collateral security.

"The said vendors are to deliver said property clear of all encumbrances, and the price is to be used, so far as may be needed, to pay off all existing encumbrances inscribed against the plantation; (except the incumbrances recorded the tract of 43 acres standing in the name of Martin Bagley).

"The price of forty-three thousand dollars ($43,000.00) is to be paid as follows:—

"1st—The purchaser assumes, to the exoneration of the vendors, the encumbrances amounting to twenty-eight thousand one hundred and forty-four dollars and ten cents ($28,144.10)—shown on the annexed paper marked Exhibit ——. 2nd—The purchasers deposit in cash at the time of signing this act the sum of $14,855.90 (making, with the $28,144.10 assumed, the sum of $43,000) with William Grant, Esq., which he is to disburse, first, by taking up all the encumbrances recorded against the plantation beyond those included in said Exhibit 'I' (except inscriptions of judgments in the name of Martin Bagley); and the balance, after paying and discharging said encumbrances, is to be paid over to the said vendors as soon as they shall produce evidence of the discharge of all the encumbrances appearing on the mortgage certificate of date May 18th, 1901, except those assumed by the vendees, amounting to $28,-144.10, and except the judgments against Martin Bagley.

"And the said William Grant is also to deduct from the said sum deposited with him the amount due for taxes, with interest and penalties, for the year 1900, and the costs and expenses of every kind incurred in the pending suit of Woodward Wight & Company, Ltd., against David Scally, wherein the said plantation is now advertised to be sold by the sheriff of Vermillion parish on May 25th, 1901.

"The purchasers are to pay all taxes for the year 1901 and to assume and to pay Woodward Wight & Company, Ltd., all plantation expenses incurred since May 1st, 1901.

"Martin Bagley, Agent.
"John J. Bagley.
"Mrs. Elizabeth Cluney Bagley.
"Witness:
"Joe B. Chaffe."

"State of Louisiana, Parish of Orleans—Before me, the undersigned authority, personally came and appeared Joe B. Chaffe, to me well known, who, being duly sworn by me, deposes and says that he was present at the time the various parties whose signatures are attached to the foregoing instrument signed the same, and that all the parties signing said agreement did so of their own free will and accord.

"Joe B. Chaffe.
"Sworn to and subscribed before me this 22nd day of May, 1901.
"Fred C. Marx, Not. Pub."

The copy of this act found in the transcript does not contain the name of Hechlinger, president of the Rose Hill Sugar Company, but it is admitted that his name was attached to it.

On the day of the execution of that act a special meeting of the board of directors of the Rose Hill Sugar Company took place "to consider the purchase of the 'Ramsey Plantation,' in Vermilion parish, for the price of forty-three thousand dollars." After discussion, a resolution was unanimously adopted authorizing and directing the president to purchase the Ramsey Plantation, Vermilion parish, La., from Mrs. Bagley and others, for the price of forty-three thousand dollars, and on such terms and conditions as he may deem best; and authorizing him, should he

be unable to be present at the signing of the necessary deeds of sale for the purchase of the plantation, to authorize and empower the general manager of the company, Joe B. Chaffe, to sign the necessary deeds and documents accepting the sale, and to accept delivery of the property.

The act of sale was, as heretofore stated, executed, Chaffe signing the act of purchase under a power of attorney from Hechlinger.

After the execution of the sale the plaintiff claimed that he was the owner of certain property which he declared was on the Ramsey Plantation and was not included in the sale.

The property so claimed is contained in a list which is annexed to the petition of the plaintiff in this case, and is as follows:

| | | |
|---|---:|---:|
| 1 centrifugal engine............... $ | 250 | 00 |
| 3 4 ft. rollers and housing for same.. | 250 | 00 |
| 1 fly wheel spider................ | 100 | 00 |
| 2 bed plates for said mill.......... | 150 | 00 |
| 1 hub for spur wheel.............. | 100 | 00 |
| 1 engine 12x48 with main shaft..... | 150 | 00 |
| 4 old boilers 42 in.x26 ft. and mud drum ....................... | 300 | 00 |
| 2 pieces of mill timber 8x16x20.... | 10 | 00 |
| 1 piece 3 inch steam pipe for engine | 15 | 00 |
| 1 box of asbestos covering......... | 5 | 00 |
| 1 jack-screw and box of pipe tools.... | 20 | 00 |
| 1 platform scales................. | 75 | 00 |
| 3 wheel-barrows ................. | 5 | 00 |
| 1 locomotive boiler............... | 250 | 00 |
| 2½ dozen boiler tiles.............. | 10 | 00 |
| 1 boiler front ................... | 10 | 00 |
| 5 cisterns ...................... | 165 | 00 |
| 1 cane derrick at end of tram in Prairie Greig ...................... | 25 | 00 |
| 100 acres wire and plank (combined) fence ......................... | 800 | 00 |
| 82 acres of wire fence at $2.60...... | 213 | 20 |
| 1 carriage house.................. | 20 | 00 |
| 1 blow-engine ................... | 300 | 00 |
| 3 new gates...................... | 15 | 00 |
| Lot of old iron and loose lumber.... | 100 | 00 |
| A box of bees.................... | 25 | 00 |
| 1 sugar mixer.................... | 500 | 00 |
| 3 blow-up tanks.................. | 300 | 00 |
| 265 panels of picket fence......... | 215 | 00 |
| 300 new cypress posts............. | 15 | 00 |
| | $4,443 | 20 |

The defendant contesting plaintiff's claims and pretensions, he instituted the present suit for the recovery of the property, and in default of delivery that the defendant be condemned to pay him the value of the property and damages. The property claimed was, on plaintiff's prayer, sequestered, but subsequently bonded by the defendant.

In plaintiff's petition it is averred that at the time of the sale it was expressly understood and agreed that the property claimed was reserved to him. The contentions of the defendants are detailed fully in the answer which they filed. After pleading a general denial, as their version of the situation, they averred that the Ramsey Plantation, in Vermilion parish, mentioned in the petition, belonged to Mrs. Elizabeth Cluney, second wife of Martin Bagley, and John J. Bagley, son of Martin Bagley and of the first wife of Martin Bagley; that Martin Bagley, the husband of the said Mrs. Bagley and the father of the said John J. Bagley, was the agent representing the said owners, and managing and running the said plantation, and vested with full powers by them to sell the said plantation, or to make such other disposition of it as, in his discretion, he should deem proper. That said plantation had at one time belonged to one David Scally, who sold the same to Mrs. Martin Bagley, she assuming the vendor's and mortgage notes, binding the said plantation, given by David Scally; that the vendor's and mortgage notes binding the said plantation became the property of Woodward, Wight & Co., Limited, and the same not having been paid, Woodward, Wight & Co., Limited, instituted proceedings in executory process to cause the said plantation to be seized and sold, and under said proceedings the plantation was seized and advertised to be sold on May 25, 1901, by the sheriff of Vermilion parish, La. That the entire plantation was seized and advertised for sale, including everything thereon that was immovable by destination, and including all the appurtenances and equipment thereof. That the plantation was subject to many other mortgages besides that under which the plantation was so seized, and that the owners of the plantation had little hope that if sold at public sale it would realize enough to pay the mortgages and judgment resting against the plantation and against the owners thereof, and accordingly the said Martin Bagley, representing the owners of the plantation, negotiated with many persons to purchase the plantation at such a price as would give the owners thereof a small sum over and above the mortgages and judgments resting on said plantation.

That Martin Bagley negotiated with the

Rose Hill Sugar Company, Limited, to induce them to purchase the said plantation, and that as the result of said negotiations the said Rose Hill Sugar Company, Limited, did on May 21, 1901, agree to purchase the said plantation for the price and sum of forty-three thousand dollars ($43,000), and on the conditions stated in the private agreement to purchase, a copy whereof was annexed as answer; that the said agreement was entered into in the city of New Orleans, more than 150 miles distant from the said "Ramsey" Plantation, and that the said Martin Bagley offered a description of the said plantation, and of the improvements thereon, a copy of which, dated March 21, 1901, and erroneously referred to in said agreement as of date May 4, 1901, was attached to said agreement to buy the said plantation, and was attached to the answer as part thereof; that the sole object of the said list was to give a general idea of what was on the said plantation by way of general description.

That at the time said agreement to buy was entered into not one word was said by any of the parties to said agreement as to the reservation by the owners of said plantation of any personal property on and forming part of said plantation as immovables by destination, or as being part of the equipment and appurtenances thereof; that it was well understood that the sale of said plantation was to include the plantation, with everything thereon that was immovable by destination and was a part thereof by law, and the entire equipment and appurtenances thereof, and that the list of improvements thereon was given merely by way of description, and not by way of limitation; that no one at the time supposed for one moment that anything would be excluded from the sale of said plantation which was a part thereof or a part of the equipment thereof. That pursuant to the said agreement, and in order to carry out the same, the parties to said agreement met in Abbeville, Vermilion parish, La., on May 25, 1901, in order to execute a formal act of sale of the said plantation by the owners thereof to the said Rose Hill Sugar Company, Limited; that the said act of sale was accordingly drawn up, and that it was the intention of the parties to said act of sale that the entire plantation, with all and every

111 La.—9

part thereof, and everything thereon that was immovable by destination, or that was in law a part and parcel of said plantation, with all the improvements and equipment thereon, should be covered by the said sale; that it was well understood that the said list attached to the said act of sale was a mere copy of the description of the said plantation attached to the agreement to sell, and was to have no more or greater effect in the formal act of sale than as merely descriptive in a general way of the improvements on said plantation.

That nothing was said or stipulated as to the reservation of any personal property on said plantation, either in said act or verbally, at the time of the passage of said act, further than that the said Martin Bagley stated that the sale did not include a milk cow or milk cows on the plantation, which were his property, nor his horse and buggy, and a few other articles of a like personal nature. That none of the objects so mentioned by Martin Bagley were a part of or incorporated with the plantation, and that neither Martin Bagley nor any one else said anything whatever about taking from the said plantation, or excluding from the operation of said sale, any articles which were a part of or incorporated with said plantation, or immovable by destination, or part of its equipment and appurtenances. That it was respondents' understanding, and respondents believed and averred that it was well understood by the said Martin Bagley also, that the sale was intended to convey and did convey to respondents the Rose Hill Sugar Company, Limited, the whole of said Ramsey Plantation, with everything thereon which was immovable by destination, or which was a part of its appurtenances or working equipment, and would be necessary and used in working and running the plantation as it stood at that time. That at the time of the sale of the said Ramsey Plantation to the Rose Hill Sugar Company, Limited, there was on the said plantation some old machinery which had been taken down and replaced by new machinery, and which, having been disconnected from the said plantation and replaced by other articles, was no longer a part thereof. That after the said Ramsey Plantation had been sold to the said Rose Hill Sugar Company, the said Martin Bagley, without any authority or per-

mission from any one, came upon the plantation and undertook to remove and did remove therefrom, before respondents were informed of his action, a number of articles which he claimed belonged to him or to his principals. That when respondent Joseph B. Chaffe, who was the manager of the Rose Hill Sugar Company, heard of what the said Bagley was doing, he notified him that he must stop removing articles from the Ramsey Plantation, and that he, the said Chaffe, would not permit him (Bagley) to come on the plantation to remove any articles except the ones enumerated above, without the written consent of the Rose Hill Sugar Company.

That among other things belonging to the plantation which Martin Bagley had so removed were trucks and engines (parts of the locomotive) belonging to the tramway on said plantation, and which were the property of the Rose Hill Sugar Company, and that the trucks and engines were worth the sum of $300. That as to the articles claimed by the said Bagley in the petition herein, the greater part of said articles were included in the sale of the plantation to the Rose Hill Sugar Company as part and parcel of the plantation, being immovable by destination, and part of the equipment and appurtenances of said plantation. Respondents annexed to their answer as a part thereof a list of the articles claimed by John J. Bagley in his petition, rearranged and numbered item by item from 1 to 29, both inclusive; that the list was marked "Exhibit A." Respondents said that the articles from No. 1 to 10, inclusive, on said list, were sundry pieces of old machinery which had been replaced by new machinery, and had thereby become movable, and were not included in the sale. Item No. 11 — three wheelbarrows — was part of the equipment and agricultural implements of the plantation, and were included in the sale. As to item No. 12, said item was so vaguely described that respondents could only say, if there was any old iron, and loose lumber, the said item was not covered by the sale. As to item No. 13 (one lot of bees), while the same went with the plantation, respondents had no use for them, and Bagley was welcome to the same. Item No. 14 was not a part of the plantation, nor covered by the sale. Item No. 15 was a part of the plantation, and covered by the sale. Item No. 16 consisted of

the cisterns attached to the various houses on the place, and same were covered by the sale. Item No. 17 was not covered by the sale. Items Nos. 18, 19, and 20 were parts of the plantation, and covered by the sale. Items Nos. 21, 22, 23, 24, 25, 26, 27, 28, and 29 were all part and parcel of the plantation, its machinery and equipment, and were covered by the sale, and were the property of the Rose Hill Sugar Company. That the said above-mentioned items Nos. 1 to 10, inclusive, Nos. 12, 13, 14, and 17, were not claimed by respondent the Rose Hill Sugar Company under the said act of sale, and the same might be removed by Martin Bagley, as agent for his wife, and for his son, John J. Bagley, at any time he desired to come and take same, but that all the other articles mentioned on said list were covered by said sale to the Rose Hill Sugar Company, and were the property of the Rose Hill Sugar Company; and respondents tendered to the said Martin Bagley and his principals permission to come on said plantation and remove said things at any time that he might designate, respondents being under no obligations to take said things and deliver them to the owners thereof, but only to permit the owners to come on the plantation and to take them, which permission was accorded, to be exercised at any time on proper notice to respondents. That Martin Bagley and his principals were all liable in solido to return the said trucks and engines taken by Martin Bagley, and which were the property of the Rose Hill Sugar Company.

That neither Martin Bagley nor his principals ever did demand merely the articles which, as hereinabove stated, respondents were willing they should take from the plantation, but demanded with the articles a great many other articles which were immovable by destination part and parcel of the plantation, and included in the sale thereof to the Rose Hill Sugar Company, and the property of the Rose Hill Sugar Company; that respondents would never have objected to Martin Bagley or his principals coming on the plantation to remove the articles which respondents hereinabove declared they did not claim; and, under the circumstances, no demand or amicable demand having been made for permission to come on the plantation and get the articles conceded to belong to Bag-

ley, the sequestration thereof was wrongfully issued.

Respondents prayed that the petition and demand of the said John J. Bagley be rejected at his costs, and the sequestration sued out be dissolved, and, assuming the position of plaintiffs in reconvention, respondents prayed for judgment declaring respondents to be the owners of the trucks and engines (parts of the locomotive) removed by Martin Bagley, and ordering the plaintiff and Martin Bagley to return the said trucks, engines, and parts of the locomotive within a time to be fixed by the court, or, in default of his returning said trucks and engines (parts of the locomotive) within such time, to return the value thereof, to wit, the sum of three hundred dollars ($300).

The district court rendered judgment in favor of the plaintiff for the articles sequestered, and, in default of delivery thereof, for the value of the same, with costs. Defendant appealed.

The evidence disclosed that at the time of this sale the Ramsey Plantation was under seizure in the suit of Woodward, Wight & Co. v. David Scalley, but that in consequence of the sale to defendant the seizure was withdrawn.

On the trial plaintiff placed upon the stand Martin Bagley, the party who had acted as agent of the vendors in the negotiations which led to the sale. Upon his being asked "what reservation he made in that sale of articles in the plantation at the date of the sale," objection was made by defendant that parol evidence of reservations was inadmissible; that if there were reservations the fact must appear from the act itself. The court sustained the objection, holding that the act itself was the best evidence as to whether there were any reservations. Plaintiff excepted to the ruling. The witness was permitted to testify, without objection, to the fact that at the time of the trial the Ramsey refinery was dismantled—there was hardly anything left of it; that the process of dismantling commenced immediately after the sale.

Being asked whether the locomotive boiler mentioned in plaintiff's petition was any part of the Ramsey refinery, he answered that boiler was used as a locomotive; it was attached to the Ramsey refinery only for the purpose of testing the boilers; it was not a necessary adjunct for running the mill; it was used to run the mill. On cross-examination, he said the locomotive was a train locomotive; that there was a train on the plantation, which was sold with the place, and the locomotive had been used on it, but not for several years; it was torn to pieces and abandoned, and not used as a locomotive; it was not used at the time of the sale as a donkey engine; it was attached at the time of the sale to test the boilers which had been repaired—by getting steam on the doctor pump with the boiler, it had been at one time loaned off the place to run an irrigating pump; it was never used as a donkey boiler—there was no donkey boiler used.

Defendant's counsel asking the witness. "You claim one smokestack, one cane carrier, one bagasse carrier, one engine, and one juice heater valued at $250—were not these part and parcel of the sugar house?" Plaintiff's counsel said he made the same objection which defendants' counsel had made—that the act of sale stated what was sold: that the act contained the whole thing. The court stated it did not understand the witness was asked what was sold, but what was connected with the sugar house, with the intention, possibly, of establishing what things were immovable by destination; that it would permit counsel to show how these different articles were placed upon the plantation, and whether they were a part of the realty or not; that defendant's answer alleged that certain things not enumerated in Exhibit A, on account of the position and use in the plantation, had become a part of the realty; and defendant's counsel stated that that was the object of the testimony; that it thought the testimony admissible for that restricted purpose, but not in any manner to contradict, vary, or change the recitals of the public act; that that act was binding between the parties, unless, on account of the use made on the plantation of some of the articles, they had become immovable by destination and passed to the defendant by virtue of the sale. Plaintiff's counsel excepted to this ruling.

Answering the particular question propounded as to the smokestack, carriers, and juice heater, and whether they were not connected with the sugar house at the time

of the sale, the witness answered that they were on the plantation. He further testified that the syrup tanks claimed by the plaintiff were at the time of the sale on a tank boat in Bayou Vermilion, and at the date of the trial were on the Mouton Plantation. Chaffe, who was the general manager of the defendant company at the time of the sale, as a witness on its behalf testified to having taken possession of the plantation for it; he knew exactly the condition of the Ramsey Plantation at that time. The list of articles claimed by plaintiff was exhibited to him, and he was asked to state, item by item, just how they were connected with the plantation, and whether they formed, at the time of the sale, any part of the same. Objection was again made to parol evidence—to any evidence going to show that anything else was sold than what was contained in the list attached to the act of sale. The court ruled that the parties to the sale were bound by its recitals, but that the witness would be heard to testify as to what articles of machinery in dispute in the case were upon the plantation, and the manner of their connection at the time of the sale, and it would finally determine whether these various items, or any of them, formed a part of the realty and were immovable by destination. Plaintiff excepted to the ruling. The witness took up one by one the various items, mentioning those which he conceded were not attached to the plantation, and those which he declared were covered by the general description in the list attached to the sale. He testified that the carriage house claimed by plaintiff was one of the buildings on the plantation; that the five cisterns were connected with the buildings near which they stood; that the fences were necessary to the plantation, and the plantation could not be carried on without it, as there was no fence law; that the jackscrew and box-pipe tools and platform scales were part of the sugar-house equipment; so also was the locomotive boiler; it was attached as donkey boiler by steam and water pipe connections; the blower and engine were part of the bagasse furnishing outfit; the centrifugal engine and sugar mixer were part of the sugar-house outfit, and absolutely essential for the making of sugar with that sugar house; that the blow-up tanks were part of the sugar-house equipment, and absolutely essential for the manufacturing of sugar with the sugar house as sold to the defendant. The smokestack claimed by plaintiff in his supplemental petition, and the other items therein enumerated, were all absolutely essential for the operation of that plant as arranged at the time of the sale.

Being asked by defendant's counsel whether the items that he had mentioned were connected with and formed part of the realty at the time of the purchase and sale to defendant, objection was made, and sustained, that that was a matter of law. The witness, however, answered that at the time he took possession they were attached to the sugar house, and were essential to the operation of that sugar house as then arranged, as part of the realty, and as claimed by defendant; that without this property the factory could not be operated as a sugar house. On cross-examination the following testimony was adduced:

"Q. You are perfectly familiar with all the circumstances surrounding this sale?

"A. Yes, all save one.

"Q. You knew what purpose they proposed to make of the Ramsey Plantation, did you not, at the time of the sale?

"A. I did.

"Q. You knew that it was going to be sold separately, and dismantled, and sold to separate persons?

"A. I did not know that for a fact.

"Q. You had reason to believe, though, that such would be done with it, did you not?

"A. Yes, I had reason to believe that such would be done; but, as a matter of fact, there was other machinery under contract of purchase that would have made it practically unnecessary to remove any part of that sugar house to Rose Hill.

"Q. It was never the idea or purpose of the Rose Hill Sugar Company to use the Ramsey refinery as a refinery, was it?

"A. I don't know the intention of the officers of the company.

"Q. Did you not have every reason to believe that at the time of the sale of the Ramsey sugar plantation to the Rose Hill Sugar Company, that the Ramsey refinery would be dismantled? Was it not your understanding at the time that the Ramsey refinery would be dismantled; in other words,

would be discontinued and the machinery removed to another point?

"A. Do you mean that the machinery would be sold and realized upon?

"Q. Yes.

"A. If they retained the plantation—yes."

On re-examination he stated that the items he testified to as being in the sugar house were the usual and necessary articles of a sugar house, the scales, etc., absolutely essential to the equipment of any sugar house.

Harras, a witness for defendant, testified that the locomotive boiler claimed by plaintiff was used first as a locomotive on the tramway, and then in the sugar house; it was connected with the donkey pump to wash the boilers and to fill the boilers with water; there was none of the machinery connected with that sugar house was essential to its operation.

Defendant placed Isadore Hechlinger, president of the Rose Hill Sugar Company, and William Grant, attorney at law, upon the stand, as witnesses on its behalf. The testimony given by them was taken subject to the exception previously taken to the reception of parol evidence respecting the terms of sale or for the purpose of altering or affecting the same.

Hechlinger testified that the written agreement for the sale of the Ramsey Plantation was made between himself and Martin Bagley, agent; that when the act of sale was passed in Abbeville Mr. Bagley asked him if he had any objections to his taking away his personal property, such as hogs, cows, household furniture, and such articles, and that he told him, "Certainly not"; to arrange the matter with Mr. Chaffe; that the latter would go down to the place with him, and he should point out what he considered his personal property he wished to take away; that he instructed Mr. Chaffe to go down there as soon as possible and deliver him such things in the way of personal property as he would point out. That was the conversation he had in respect to that; he seemed to be perfectly satisfied—made no objections of any kind. Mr. Bagley made no mention to him of anything regarding the exclusion from the sale of the articles mentioned in the petition. The form of the act of sale which was executed before Summers, notary, was prepared in New Orleans, and sent by mail to Mr. Chaffe, to be copied on the day of the sale in Abbeville. Nobody suggested to put this list in the act of sale; somebody suggested to put it in; Major Grant said it was not necessary. After some discussion it went in. Why, the witness did not know; there was no discussion as to changing the form of the act that was sent up. On cross-examination witness said he had never been on the plantation — knew absolutely nothing of it. There was at the time a running refinery in running condition. The company did not buy Ramsey for the purpose of operating a refinery there; the intention was to take a good deal of the machinery out of Ramsey and put it in Rose Hill; it was not the intention to operate Ramsey as a central factory. Being asked whether there was not annexed to the proposition of sale a description of the lands, but a description of the improvements which were on the plantation, he answered, "In a general way, as to what I could expect."

Asked whether it was not in detail, he answered no, it was just simply as a guide, and in a general way what he might expect if he bought the plantation. He did not buy according to the newspaper advertisements made in the matter of the seizure of the property; there were some properties in the private act additional to those which were covered by the mortgage and seizure. Bagley went to New Orleans with this description, and witness and several creditors met him in the latter's office, and the terms of sale were agreed upon, and witness signed an acceptance of Bagley's offer. The act of sale was finally consummated. It was dictated by witness' attorney and signed, except some changes made before by Mr. Summers, the notary. The conversations he had testified to were conversations had prior to signing of the act. On redirect examination witness stated that when Bagley was first made a written offer of the plantation he did not speak of excluding the articles mentioned in the list attached to the petition. Witness knew in a general way—he was not sure of their being in existence. Witness understood the entire property as it stood, whatever it might contain, was included in the sale. Never having been on the plantation, he did not know exactly what it contained. The Rose Hill Sugar Company was buying the

Ramsey Plantation in its entirety—excluding nothing.

Witness' counsel, stating to him that in the description of the improvements contained in the offer to sell a great number of articles were given, asked what the purpose of the exhibit was, and whether it purported to be complete; and he answered it did not; its object was, in a general way, to give an idea of the value of the property; he intended and understood he was buying the entire plantation, whatever was on it; had he had any idea that Mr. Bagley would exclude any articles mentioned in the petition, he would not have made the trade.

The following testimony was given by the witness on cross-examination:

"Q. But what was your idea to reproduce this description in the act of sale?

"A. I don't know—some idea of the notary's.

"Q. That was not born in the notary's head; he did not know anything about it. How could he get that list unless some one gave it to him?

"A. I did not give him the list.

"Q. You do not mean to say the notary invented it?

"A. I did not give him the list.

"Q. Who gave him the list?

"A. The paper was sent to Mr. Chaffe. The whole thing was given to the notary, and when he drew up the papers we all signed them. The only discussion Mr. Bagley had with me in the notary's office was the privilege to take his personal effects. I told him he could do so. I instructed Mr. Chaffe to go the next day and have Bagley point out to him his personal effects and give them. I got a report from Mr. Chaffe that Bagley did so."

He pointed out everything he thought he was entitled to, which witness thought settled the matter. The company heard no more about it until this suit claiming numerous articles. That was the first intimation witness had that Mr. Bagley had any idea or intended to exclude these articles from the sale.

Mr. William Grant, attorney at law, signed the act of sale. He was acting for and on behalf of certain creditors, who, under the terms of sale, were to receive notes given by the purchasers. As a witness he testified

that the list annexed to the act of sale was not at that time furnished by Bagley; it was a list made out by Mr. Chaffe, and in his possession at the time of sale; that his recollection was that Chaffe produced the list. Witness could not give all the conversation which took place in the notary's office at the time of the sale; he remembered there was some discussion in regard to the property that was on the plantation, and that Mr. Chaffe had a list of the supposed property on the plantation at the time, that is, machinery and other things attached to the real estate, and that he exhibited this list; his recollection was that it was attached to the deed to show what property was on the plantation attached to the real estate at the time to give a general idea of its character and value. Witness understood that an understanding was had between Mr. Chaffe and Mr. Bagley as to what he would be entitled to take away; he did not remember whether there was a list of that property or not, but it seemed satisfactory to Mr. Bagley. The conversation took place just about the close of the writing of the act. Witness had a distinct recollection, as he suggested that it was not necessary at all to annex a list of the improvements on the plantation, because they would go with the transfer of the property as part of it. Exactly upon whose suggestion the Exhibit A he did not remember, but it was a general conversation, and the result was, either the notary thought it best to put it in there, or some one else. Witness recollected some of the articles Bagley said would not go with the sale, but whether these included all or not he could not say; he did claim it was understood he was to take away the cattle and his saddle horses, and some household furniture and things of that character. Witness was positive that nothing was said about the right to take away the articles in the list annexed to the petition. Witness would have objected, as the creditors were taking a mortgage on the property, and would not have allowed it to be depleted that way.

Asked whether his attention had been directed since signing the act to the clause therein which reads, "the appurtenances included and covered by this sale are the different items mentioned in the annexed list marked 'A' which is made a part of this act," he answered that he "did not recollect having

read that particular part of it; it was put in as the very last thing." Asked whether he did not recollect that Exhibit A was put in for the purpose of avoiding any further discussion as to what was and was not to be taken away by Bagley, he said "he did not think it was."

Asked whether the Exhibit A was shown by them, and to all the parties who were discussing the sale, as a complete list of all the improvements which went with the plantation, he said he understood the list to be a list of improvements on the plantation. Asked whether, when the discussion arose respecting what movables were to be retained, the list A was a list of things which were not necessary, and not a part of the improvements then in use on the plantation, and not then annexed to the act, for the purpose of settling all discussion or discussion respecting that, he answered he did not think it was.

Asked whether he did not observe that the articles in the list in the petition were different from the list of improvements in the Exhibit A annexed to the act of sale, he answered that he observed they were not enumerated in the schedule annexed to the deed, but he did not understand this, and did not at the time of testifying understand that that list intended to schedule any part of the property which was immovable by destination, or was attached to the plantation for the purposes; that it was not under consideration at all that Mr. Bagley should have wire and plank fences on the place, or the cisterns, nor the gates.

Asked, if all these items were to be included in the sale, and were to be included in the sale and no discussion about it, why he should insert in an act signed by himself the stipulation that the items which were to be covered by the sale were in an annexed list to the act of sale, he answered he had already explained what took place in regard to this list. Witness said, then, that he considered it unnecessary to do so, as everything that belonged to the plantation would go with the sale anyhow, whether fences or anything else.

Asked whether it was not competent for the parties selling the place, and those buying, to stipulate certain particular articles which should not be considered as going with the place, he answered, "There was no such stipulation." Asked whether he read this out "of the act," he answered, "No; he read it just as it was—no stipulation to exclude anything."

Asked whether he was not aware of the rule that when you enumerate you exclude what you do not enumerate, he answered he was aware of that. Witness said that the only discussion he heard as to what was excluded was in regard to things of that character as would be naturally the personal belongings of a man in his household and use of his family; there was some discussion as to these things which he would be allowed to take off. Witness thought there was a discussion before the act of sale passed—in New Orleans besides. He was not certain about it. There was a discussion in New Orleans, and it was generally conceded that he would take off those things—horses and personal belongings of that character—but never any discussion of his right to carry off things that belonged to the proper service of the plantation, or fences, or anything of that kind. The discussion took place off and on in the attorney's office in the presence of the president of the company, and other parties interested, and Mr. Bagley. There was no discussion, when the act of sale was executed, as to changing the form of the act.

## Opinion.

We cannot expunge or ignore the list which we find attached to the act of sale passed on the 25th of May, 1901, between John J. Bagley and Elizabeth Cluney, wife of Martin Bagley, and the Rose Hill Sugar Company, which is headed "Improvements" and marked "Exhibit A." It is specially referred to in the body of the act in a clause which, referring to the antecedent description of the "thing sold" by the parties, declared that the appurtenances included in and covered by the sale are the different items mentioned in the annexed list marked "Exhibit A" which is made a part hereof.

Independently of the force of the situation resulting from this fact itself, we are satisfied from an examination of the evidence adduced (of which a résumé accompanies this opinion for reference), that the purpose of this list originally was not, as claimed, merely to give a general description of the improvements on the plantation, but to change

the legal result from that which would have followed had the sale been made with this list absent. The clause referred to, as well as the list itself, were included in the written agreement to sell which had been reached between the parties. A copy of this list was sent by the Rose Hill Sugar Company to Chaffe, its manager in Lafayette. The formal act of sale was prepared in New Orleans, and forwarded to the notary. When the parties met to pass the act the absence of this list was noticed, and a discussion took place in respect to the same, with the result that Chaffe produced the copy of the list, and. it was annexed. Mr. Grant says that he stated at the time that the list was unnecessary, as the things covered by the sale immovable in character or by destination would pass without any list; he says he does not know at whose suggestion the list was annexed, but obviously it was at the instance of the vendors, who had a direct interest in not having matters take the shape they would if it was left out.

The facts of this discussion reached at that time are very significant. It shows that both parties were placed upon guard as to the importance of the list upon their respective rights and obligations. Non constat if the list had not been annexed that the vendors would have sold the property; they had the right to have the sale follow the terms of sale just as they had been fixed in the written agreement to sell.

What the effect was of the insertion in the act of the clause in question and of the list is the matter submitted to the district court.

On the trial of the cause both parties objected to parol evidence which was allowed by the court to be introduced, under limitations. The court held that parol evidence was inadmissible in so far as it would alter, vary, or contradict the recitals of the act of sale, but that it was admissible to show how the particular articles claimed by the plaintiff were connected at the time of the sale with the plantation as being immovable in character or by destination, so as to place it in position to judge whether these particular objects were at the making of the sale within the view of the parties.

The act of sale declared certain fully described real estate to be the object of the sale, "together with all the buildings and improvements thereon, and all the rights, ways, servitudes, privileges, prescriptions, and appurtenances thereunto in any manner appertaining, and more particularly as shown in the act."

After the description of the real estate followed the clause: "The appurtenances included in and covered by this sale are the different items mentioned in the annexed list marked 'Exhibit A,' which is made a part of this act." This list contained a large number of objects variously described; for instance, the first mentioned, "one frame sugar house or factory." There were other descriptions, such as, "One Baldwin sugar shaker, elevators, conveyers, etc., eighteen double cabins, Boarding house, sleeping house, office, Cooper shop, two plantation scales, carts, plows, cultivators, hoes, gear," etc.

Defendant's contention, as we understand, was that he was entitled to bring in, under the scope of one of the things enumerated, anything which was proper to make that thing complete; thus, "eighteen cabins" having avowedly been sold, it was his right to show that the five cisterns claimed formed necessary parts of different cabins and passed with the cabins; that several of the enumerations having ended with the word "etc." (et cetera), this left open for explanation and proof what articles could and did fall properly under such an enumeration. In Bayley v. Denny, 26 La. Ann. 257, the court allowed parol evidence where the object of the proof was to ascertain the nature of the subject to which the instrument referred, citing Greenleaf on Evidence, c. 15, par. 286, and authorities there cited.

In the brief of defendant's counsel they say, "Bagley meant something when he rounded off his description with an 'etc.'" What did he mean? The greatest of poets asks, "Are et ceteras nothing?" In law they are very important. The definition of the term in its usual and popular signification is given in the Century Dictionary as:

"And others; and so forth; and so on; generally used, when a number of individuals of a class have been specified, to indicate that more of the same sort might have been mentioned, but for shortness are omitted."

This is what people understand in common parlance when they use the word "etc." And

if it be taken to have been used in this sense in the final miscellaneous clauses of the description of the sugar mill and plantation improvements, it clearly shows that Bagley did not intend that description as complete and exhaustive, and as exclusive of everything not expressly mentioned. On the contrary, the description asserts that other improvements and parts exist, but for brevity are not mentioned. This assertion entitles the buyers to all such other parts and improvements as usually form part of and go with the things described and sold. Lord Coke observed long ago that "an et cetera doth imply some other necessary matter." Comm. 17a. In a recent case, where the question was as to the meaning of the words "machinery, boilers, etc.," of a steamboat, the court held that the term "etc." denoted "the other material parts of the boat." Gray v. R. R. Co., 11 Hun, 70. So in the sale of "good will, etc.," the "etc." was held to carry the belongings of the good will, such, for instance, as trade marks. Cooper v. Hood, 28 Law J. Ch. 215. So the sale of "livery stock horses, buggies, etc., of Dutton & Yatter" was held to indicate an intention to convey not only the things specifically mentioned, but "all the property used in the business." Shuler v. Dutton, 75 Iowa, 155, 39 N. W. 239. The very exhibit on which Bagley relies shows a clear intention to include other improvements besides those expressly described. This refutes his contention that the purpose of that intention was to confine the sale to the articles mentioned and to exclude all others. Besides, Bagley was the vendor. If he desired to reserve anything from the sale, he was bound to make the reservation clearly and unmistakably.

The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him. Civ. Code, art. 2474; Delogny v. Mercer, 43 La. Ann. 213, 8 South. 903; Brown v. Broussard, 43 La. Ann. 962, 9 South. 911.

The act of sale begins by declaring that Bagley sells and delivers the plantation, "with all the buildings and improvements thereon." His obligation as vendor, measured by this clause, defeats his present suit. But he contends that in a subsequent clause he limited his obligation as vendor to the sale

of certain improvements and machinery, and none other. Yet when we examine the exhibit, which is supposed to establish this limitation, we find that it not only enumerates particular improvements, but adds "etc.," i. e., that there are others.

We think the district court was correct in holding that parol evidence was inadmissible to alter, vary, or contradict the written act of sale, and that the parties were bound by its recitals; that it was also correct in permitting such evidence for certain limited purposes, not carrying, with the alteration, variation or contradiction of the acts.

Defendant's contention is well grounded to some, but not to the full extent that it is made. If a particular object was found mentioned in the list as one of the improvements conveyed, defendant was authorized to establish by parol that certain articles were necessary and proper in order to give completeness to that object. So, also, the list, where describing the improvements included in the sale, contained in one part the expression "et cetera." Defendant was authorized to show by parol that certain articles properly fell under that expression as used, and in the particular place it was used; for instance, if included in the list of things sold were mentioned "plows, harness, rakes, etc.," it would be proper to show by parol that "hoes, spades," and cultivators would pass, but it would not be legitimate to extend the expression "et cetera" under such circumstances beyond the class of articles in special connection with which it was used. The use of the expression indicating that something else was sold (not expressly mentioned) would not justify the argument that in contemplation of the parties the fencing on the plantation, which was something in character entirely different from farming utensils, was included.

Counsel urge that the limitation which Mr. Bagley asserts was imported into the act by Exhibit A would have been a very unusual one. Its effect would be to reserve to the vendor the plantation fences and the smokestack and other essential parts of the sugar house; that a vendor intending to ingraft such a reservation in an act of sale is bound to make his intention appear in the most unmistakable terms; that it is hardly conceivable that the purchaser of a sugar plan-

tation would under any circumstances consent to the reservation in favor of the seller of the right to remove the fences, smokestack, carriage house, and such other things.

Assuming that where the recitals of an act of sale as to the terms and conditions are such as to carry with them certain legal results, courts would be authorized to consider them and dispose of them from the standpoint of their being reasonable or unreasonable. The circumstances under which this particular plantation was bought were out of the usual order. The Rose Hill Sugar Company owned property, with a complete sugar refinery thereon, adjoining the Ramsey Plantation, and the latter was bought to be used as an annex to and in connection with the same. Concessions or reservations which a purchaser under usual conditions would be likely to grant in favor of a seller might not be unreasonable in view of the subsequent use to be made of the property and the price given for it. This property was apparently a very valuable one, and the price paid for it was small, if the estimate of value placed upon it by the owners can be taken as anything of a criterion. Just as soon as the Ramsey Plantation was bought, the refinery upon it was dismantled. Many things which would have been indispensable had the plantation been continued to be kept up separately would cease to be such under changed conditions.

We must not, however, deal with matters from what parties might or might not be likely to do when we have before us evidence of what they have in fact done.

The appurtenances and improvements which were to be included in the sale were expressly and specially enumerated in the list attached to the act of sale, and they exclude others, except in so far as by the terms of the list itself particular objects or articles could be made to be included thereunder. Civ. Code, art. 1961; Ker v. Evershed, 41 La. Ann. 17, 6 South. 566. We cannot alter or vary the contract which the parties have thought proper to make, so long as they had the legal right to make the same. The following articles claimed by the plaintiff pass by the sale to the defendant:

"One smokestack, one cane carrier, one bagasse carrier, one bagasse engine, one juice heater, five cisterns, one blower and engine, one centrifugal, and one sugar mixer."

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be amended by rejecting plaintiff's demand to the ownership of one smokestack, one cane carrier, one bagasse carrier, one bagasse engine, one juice heater, five cisterns, one blower and engine, one centrifugal, and one sugar mixer.

It is further ordered and decreed that the writ of sequestration which issued herein, in so far as it covered said articles, be and the same is set aside. It is further ordered, adjudged, and decreed that the judgment appealed from, except as is herein amended, be and the same is affirmed, at appellee's costs.

BLANCHARD, J., concurs in the opinion and decree in all respects, save in the particular allowing plaintiff's claim to the fence. In that respect he dissents.

PROVOSTY, J., dissents, holding that the fences of a plantation necessarily pass with the plantation as part of it, unless specifically excepted.

### On Rehearing.

#### (Dec. 14, 1903.)

PROVOSTY, J. In the original opinion in this case, the court reached the conclusion that it was the intention of the owners and vendors of the Ramsey Plantation to qualify the act of sale of said plantation by reserving to themselves certain things that would have passed under the general grant contained in the first clause of the act of sale, and the court adheres to that view; but the court now thinks it erred in holding that it was the intention of the vendors to reserve the fences, so as to have the right to remove them from the plantation and leave it open to the depredation of cattle.

The evidence shows that the plantation was described, bought, and sold as a sugar plantation; that is, as being a plantation actually cultivated in sugar cane at the time of the sale, and the cultivation of which it was expected would be continued. Now, there is no stock law in Vermilion parish, and the absence of a stock law makes it incumbent

upon all who cultivate the soil to fence out their neighbors' cattle. In this situation, fences are an integral and essential part of a going plantation; that is, it is impossible to operate, or even to conceive of, a sugar plantation in Vermilion parish entirely denuded of fences. Without fencing, the status of an estate as a sugar plantation could not be maintained, and the cultivation of sugar cane would be impossible. The fences become part and parcel of the plantation, necessary to its designation, description, and maintenance as a sugar plantation. The fences therefore go with the soil as a part of the soil, and not merely as an improvement upon it. The maxim applies, "Quidquid plantatur solo, ceditur solo." That is to say, whatever is sunk into the soil is part of the soil, and goes with it. The fence was as effectively incorporated with the soil as the cisterns were incorporated with the cottages, if not more so. The court held that the cisterns went with the cottages because they were part of the cottages, and that it was not necessary to mention the usual and ordinary parts and appurtenances of a cottage to include them under the operation of the sale. By parity of reasoning, the fences are a part of the plantation. A different rule would.apply if the property had been sold as lands. In that case there would have been no reason to hold that the fences were an essential part of the thing sold, for fences are not essential parts of lands. But fences are an essential part of a plantation, whenever, by reason of there being no stock law, the plantation cannot exist without them. Any one purchasing lands, described as being a sugar plantation in operation, naturally assumes that the fences necessary to give the lands the status of a plantation go with the lands as part and parcel of the plantation.

The same reasoning which carries the cisterns and other articles, which the court in the original opinion concedes the defendant is entitled to retain, carries to the defendant the fences as part and parcel of the plantation. Indeed, the fences are more necessary to the existence and operation of a plantation, as such, than cisterns are to the existence and use of a cabin. Under any other view the vendors would have the right to reserve the bridges over the various plantation ditches, the hitch posts, and a thousand other objects not mentioned by name or by class. The answer to all such claims would be that these things are part and parcel of the plantation.

The authorities are numerous that fences are part and parcel of the soil of cultivated land, and go with the sale of a tract of land as a farm, and that fences are included in the idea of a farm, just as a cistern is included in the idea of a cabin. Bagley v. Columbus R. R. Co., 98 Ga. 626, 25 S. E. 638, 34 L. R. A. 286, 58 Am. St. Rep. 325; Seymour v. Watson, 36 Am. Dec. 556;. Smith v. Carroll, 4 G. Greene, 146; Emrich v. Ireland, 55 Miss. 390; State v. Graves, 74 N. C. 396; Kimball v. Adams, 52 Wis. 554, 9 N. W. 170; Brown v. Bridges, 31 Iowa, 138; Graham v. Roark, 23 Ark. 19; Climer v. Wallace, 28 Mo. 556, 75 Am. Dec. 135; Ivins v. Ackerson, 38 N. J. Law, 220.

Another consideration that shows it was not in the mind of any of the parties that the fences should be reserved to the vendors is this: had any such reservation been made by the parties, it is almost certain that the vendee would have stipulated as to time and mode of removal, so that the growing crops would not be exposed to the depredations of cattle. The vendee would not have consented to a reservation which might be exercised in such a way as to inflict an immense loss on him. There would have been some provision as to how and when, and on what notice, the fences would be removed. It is equally certain that the vendors themselves would have desired to have some definite understanding on the subject, and to incorporate same in the contract. The absence of any stipulation on the subject, therefore, goes very far towards showing that neither party understood or intended that the fence should be removed.

On this rehearing it is claimed that the demand of the plaintiff should be rejected, for the reason that the sale was made by John Bagley and Mrs. Elizabeth Cluney, wife of Martin Bagley, conjointly; and that any reservation in the act of sale inured to both vendors if it inured to the benefit of either, it having inured to the benefit of one as much as to the benefit of the other, and that the present suit is brought exclusively by John J. Bagley, who does not allege that he ever acquired Mrs. Bagley's

interest, and still less offers any proof to show that he did; and that, consequently, there can be no judgment in favor of plaintiff, but that the plaintiff must be nonsuited, or the case remanded for further evidence.

This ground was not urged in the lower court, so far as the record shows, and it was not urged on the original hearing in this court. On the rehearing it is too late to urge it.

The original judgment is amended so as to add the fences to the objects as to which the demand of plaintiff is rejected, and, as thus amended, it is reinstated as the judgment of the court.